## No. 9461.

## BUTCHERS' UNION SLAUGHTER-HOUSE AND LIVE STOCK LANDING COMPANY VS. CRESCENT CITY LIVE STOCK LANDING AND SLAUGHTER-HOUSE COMPANY.

The opinion and decree of this Court in the case of the Crescent City Slaughter-house Co. vs. The City of New Orleans, 33 Ann. 934, was an authoritive judicial decision that Articles 248 and 258 of the Constitution of 1879 were valid and impaired no contract right of said company; that the city of New Orleans had the lawful right, with the concurrence of the Board of Health, to regulate the business of slaughtering within its limits, and to designate places where such business could be conducted, and also, by necessary consequence, that all persons complying with such regulations had the right to pursue said business within such designated limits. This decree was subject to reversal only by a judgment of the Supreme Court of the United States, and until so reversed, was binding as absolute law upon the parties thereto.

In prosecuting a subsequent suit in the U. S. Circuit Court for an injunction to restrain a party complying with the regulations of the city from prosecuting said business at places so designated, which suit had no foundation except in the assumption that the decree of this Court was not law, the defendant corporation acted without probable cause and can find no sanction for its course, either in advice of counsel or in the decision of the circuit court sustaining such assumption. The decree of this Court fully advised the parties what was the law, and it was not justified in acting contrary thereto upon any advice whatever.

The record sufficiently establishes that the party in bringing said suit not only acted without probable cause, but was also actuated by legal malice, i. e., by improper motive, being the determination to prolong its enjoyment of a profitable monopoly, without regard to the legal rights of others.

Held that defendant is liable for damages occasioned to plaintiff, not only by the unlawful issuance of the injunction, but also by the malicious prosecution of the suit.

In regard to the quantum and elements of damage, the contentions of defendant are considered and overruled and judgment affirmed.

APPEAL from the Civil District Court for the Parish of Orleans. *Rightor*, J.

*E. H. McCaleb* and *B. R. Forman* for Plaintiffs and Appellees:

1. One who has judicially admitted the legal existence of a corporation is estopped from pleading *nul tiel corporation*, when afterwards sued for damages on the injunction bond and for malicious prosecution. R. C. C. Art. 2291; 14 Ann. 308; 33 Ann. 732, 1444; 94 U. S. 104, 673.

Slaughter House Company vs. Slaughter House Company.

2. A petition stating the name of a corporation and also the name of its president is in strict compliance with law. R. C. C. 439; C. P. 112, 198.

3. In an action for malicious prosecution, malice may be inferred from the want of probable cause. 33 Ann. 776; 9 R. 387, 418; 9 Ann. 219. Malice to support this action is any improper motive—it need not imply malignity. Drake on Attachment, § 733. *Probable cause* means reasonable grounds of belief, supported by circumstances sufficiently strong to warrant a cautious man in that belief. 33 Ann. 392.

4. As to the measure of damages, the true standard seems to be the expenses incurred and profits lost. 27 Ann. 191. In an action for malicious prosecution, where the jury gave the plaintiff £10,000, the court refused to interfere on account of the largeness of the verdict. 2 W. Bl. 1326.

5. Where the exclusive privilege conferred upon the Crescent City Slaughter-house Company had been upheld as a lawful exercise of the State's police power, (22 Ann. 545; 16 Wall. 36) and afterwards all monopolies were abolished by the Constitution of 1879, (Arts. 235, 248, 258), and the State Supreme Court had finally decided in a suit provoked by the said Slaughter-house Company that its exclusive privilege was not a contract and had been lawfully revoked (33 Ann. 934), and the then U. S. Circuit Judge (subsequently promoted to the bench of the U. S. Supreme Court) refused to interfere on an application for injunction made by the Slaughter-house Company, and where a suit involving the same questions between the same parties was pending in a State court of competent jurisdiction, the subsequent application for an injunction to the successor of the United States Circuit Judge by a citizen of Louisiana against a citizen of Louisiana, the prior application and the refusal thereof being concealed and suppressed—and the granting and maintaining of such an injunction under the pretext that the exclusive privilege of slaughtering animals was a vested right and contract protected by the Federal Constitution (111 U. S. 746), was a contempt of the State court where the question was pending, (20 Wall. 392; 16 Wall. 370), an illegal disregard of the final decision and judgment of the State Supreme Court previously rendered, (7 How. 624), and a trifling with courts which should not be countenanced or tolerated.

The opinion and decree of the United States Circuit Judge in such case (9 Federal Rep. 743), he having no jurisdiction whatever over the controversy. by reason of the citizenship of the parties, which decision was subsequently reversed by the United States Supreme Court, (111 U. S. 746) furnishes no excuse for such unnecessary and malicious suit, and cannot be invoked as constituting probable cause for the prosecution in answer to an action for the damages caused thereby.

6. In an action for malicious prosecution the defendant cannot justify by the advice of an attorney personally interested. 71 Maine 555; 36 Am. R. 353. Nor if he acted from motives of private interest, and without probable cause. 15 Ann. 672.

7. Where the whole case is before the Appellate Court, it will not pass on bills of exceptions taken to the refusal of the judge to charge the jury as requested. 23 Ann. 75; 21 Ann. 330; 22 Ann. 603.

8. Instructions requested which are mere hypothical propositions were properly refused. 2 Ann. 756.

9. The charge of the trial judge not having been reduced to writing, this Court will presume that he stated the law correctly to the jury. 7 N. S. 250. Appellant should have required his opinion in writing. C. P. 517; 5 R. 216.

*White & Saunders* and *Robert Mott* for Defendants and Appellants.

The opinion of the Court was delivered by

FENNER, J. This is an action by the plaintiff corporation to recover damages for injury sustained in consequence of the malicious prosecu-

tion of a civil suit against it by the defendant, and of the wrongful issuance of an injunction therein.

A *résumé* of the events preceding and attending the institution of the suit referred to, will facilitate the comprehension and disposition of the issues of law and fact involved.

By an act of the legislature, No. 118 of 1869, the State granted to the Crescent City Slaughter-house and Live Stock Landing Company a monopoly or exclusive right of carrying on the business of live stock landing and slaughtering within the parishes of Orleans, Jefferson and St. Bernard, for a period of twenty-five years.

The Constitutional Convention of 1879, revoked this grant, in so far as its exclusive or monopolistic features are concerned, by adopting Articles 248 and 258 of the present Constitution of the State.

Article 258 declared that "the monopoly features in the charter of any corporation now existing in this State" (with certain exceptions not pertinent to this case) "are hereby abolished."

Article 248 provided that "the police juries of the several parishes and the constituted authorities of all incorporated municipalities of the State shall alone have the power of regulating the slaughtering of cattle and other live-stock within their respective limits; provided, no monopoly or exclusive privilege shall exist in this State, nor such business be restricted to the land or houses of any individual or corporation; providing the ordinances designating the place for slaughtering shall obtain the concurrent approval of the Board of Health, or other sanitary organization."

If these provisions of the organic law of the State were valid, it is clear that the exclusive privilege granted to defendant by Act 118 of 1869, was swept out of existence; that the city of New Orleans had the undoubted right, with the approval of the Board of Health, to pass regulations and establish localities for the conduct of this business within her limits; and that any person complying with such regulations, would have the absolute right to establish and conduct the business within the limits fixed.

The only possible ground upon which the defendant corporation could oppose the right of the city to pass regulations and the right of persons complying therewith to carry on the business, lay in the denial of the validity of the constitutional provisions, because impairing the obligation of its contract embodied in Act 118 of 1869, and thus conflicting with the Constitution of the United States.

The questions involved were serious and important. Defendant's right to assert judicially the validity of his contract and to resist, by

all legal remedies, the execution of any State laws which impaired it, was unquestioned. The question involved was federal in its nature, and the courts of the State and, perhaps, of the United States were equally open to it for the vindication of its alleged right; and, in either forum, it was entitled to appeal to the Supreme Court of the United States for the final and conclusive settlement of the question.

Shortly after the adoption of the Constitution, certain butchers petitioned the council of the city of New Orleans to take action with regard to establishing limits and regulations for slaughtering. The matter was referred to the city attorney, who reported an opinion favorable to the validity of the constitutional provisions and to the right of the city to act in the premises.

Thereupon defendant conceived that the time had arrived for it to invoke the aid of the courts to protect its alleged contract rights. It then exercised its election as between the Federal and the State courts, and concluded to submit its claims primarily to the latter.

Accordingly, on February 5, 1880, it filed a petition in the Fifth District Court for the Parish of Orleans against the city of New Orleans, alleging that the latter had entertained the petition of the butchers and was about to designate places for slaughtering other than defendant's own slaughter-house; asserting its exclusive privilege under a contract protected by the Constitution of the United States; asserting the nullity of the provisions of the Constitution of the State in so far as they impaired or interfered with said contract and praying for an injunction, restraining the city "from ever designating a place or places for the landing, yarding, sheltering or slaughtering animals, etc., other than at the slaughter-house and premises of petitioner."

The city of New Orleans answered, substantially, setting up the provisions of the State Constitution as her warrant for the action which she was about to take in designating slaughtering places within her limits; asserting their validity and denying that they impaired any contract right of the petitioner which was protected by the Constitution of the United States.

The issue thus joined in a competent forum, of the company's own selection, passed regularly to trial and determination in the district court, was appealed to this Court, and after full hearing, in May, 1881, we rendered our opinion and decree, wherein we considered all the positions and arguments of the parties and held that Act No. 118 of 1869 did not create a contract protected from impairment by the Constitution of the United States, but that the rights therein granted, being

related to subjects affecting the public health, were revocable at the will of the sovereign; and we affirmed the judgment of the lower court which was in favor of the city and rejected the demand of the company.

It is important to estimate the scope and effect of this decision. It was an authoritative judicial determination, by a competent court, of questions submitted to it at the instance of the company itself. In denying the rights claimed by the company, and in affirming the right of the city to regulate slaughtering within her limits and to designate places for the conduct of such business, it necessarily affirmed the right of persons complying with such regulations to transact that business at such places and denied the right of this company to interfere with them. If there was error in the decision, that error could be corrected by one tribunal only, the Supreme Court of the United States. Until the questions involved had been determined differently by that high tribunal, the decision of this Court was entitled to be accepted as the law by this litigant.

Technical principles of *lis pendens* and *res judicata* might not debar the company from prosecuting another suit against a different party involving the same subject-matter; but if such suit rested exclusively upon the assertion of rights which this Court had directly determined that the company did not possess, it could find no protection against the charge of being a malicious prosecution save in the production of a decision of the Supreme Court of the United States holding that our opinion was error.

To proceed with the facts of this case: Shortly after the adoption of the Constitution, the plaintiff in the present case had been organized as a corporation for the purpose of conducting a slaughter-house business and, in anticipation of action by the city and Board of Health under Art. 248, had bought land and commenced the erection of buildings for the purpose.

On the 17th of November, 1881, the city council had passed certain ordinances designating places for the slaughtering of animals within the city limits, and including therein the point at which the Butchers' Union Company had located their building, and these ordinances were under consideration by the Board of Health, and actually received the approval of that body on November 25; but, anticipating the action of the Board of Health, on the 23d of November, the Crescent City Company filed in the U. S. Circuit Court a bill in equity against the Butchers' Union Company, wherein it set forth that the city council had passed the ordinances; that the Board of Health would approve

them; that "thereupon, the Butchers' Union Company, unless re-
strained therefrom by a writ of injunction, will proceed to construct
and erect slaughter-houses, etc., and there conduct and carry on the
business of live-stock landing, slaughtering, etc."

It thus alleged the existence of every condition essential, under the
prior decision of this Court, to secure to the Butchers' Union Company
and others the absolute right to prosecute the business without inter-
ference by the complainant, and then proceeded to propound the iden-
tical grounds which had been considered and overruled by this Court,
and prayed for a writ of injunction restraining the Butchers' Union
from proceeding with the construction and•maintenance of buildings,
etc, and from carrying on anywhere within the parishes of Orleans,
Jefferson and St. Bernard, the business of stock landing and slaughter-
ing, except at complainant's own premises.

The judges of the circuit court entertained the bill, granted a rule
for injunction *pendente lite*, heard the parties, reviewed and reversed
our opinion, issued the preliminary injunction, subsequently heard the
cause on demurrer and pleas, and rendered a final decree perpetuating
the injunction.   This decree was carried by appeal to the Supreme
Court of the United States, and in April, 1884, that Court reversed it,
referring to and adopting the views which had been expressed by this
Court in the case already referred to.

The present action, as already stated, is for recovery of damages
sustained in consequence of the alleged malicious prosecution of the
above suit and of the wrongful issuance of the injunction.

Was it a malicious prosecution?

To sustain this charge it is necessary to show: 1st. That the suit
had terminated unfavorably to the prosecutor; 2d. That in bringing it,
the prosecutor had acted without probable cause; 3d. That he was
actuated by legal malice, *i. e.*, by improper or sinister motives.

The above three elements must concur.

The existence of the first is undisputed.

We are bound to hold that there was entire absence of probable
cause.   The suit involved absolutely nothing but questions of law.

Those identical questions had been submitted to' this Court by this
very prosecutor, in a case precisely analogous, and had been determined
against him.   It was thus authoritatively advised what the law was.
If it was dissatisfied with the opinion, its remedy was clear by appeal
to the United States Supreme Court, and it had actually availed itself
of that remedy on writ of error which was pending and undetermined

when the suit was brought. It must be carefully observed that though the Butchers' Union Company was not technically a party to the suit against the city, the questions of right between it and the Crescent City Company were as directly involved as if it had been a party. If the city had the right to regulate slaughtering within her limits and to designate places for its lawful conduct, obviously persons complying with such regulations had the right to transact the business. If she had not that right, no person could lawfully slaughter elsewhere than at the old company's slaughter-house.

But it is claimed that the prosecutor acted under the advice of counsel learned in the law. That is certainly true, and would ordinarily protect. But, here, the client was in possession of the opinion of this Court on the very point in its own case, involving the same subject matter. It had no need for advice of counsel. That advice was simply that the opinion of this Court was error. Counsel had the undoubted right to entertain such opinion and so to advise its client; the only lawful remedy under such advice consisted in an appeal to the United States Supreme Court. If it chose to act otherwise on such advice, it acted at its peril and can take no protection therefrom. The only lawful action it could take under such advice had been already taken in the writ of error from the United States Supreme Court. Particularly does this apply here, when one of the counsel and the only one who testifies on the subject of advice, was himself a member and a director in the defendant company. We mention this with no intention to reflect upon the able and highly respected counsel, but simply to bring home to defendant the fullest knowledge and comprehension of the legal *status* of the case. Nor does the decision of the judges of the Circuit Court of the United States afford a better shield. They are not vested with authority to review or reverse the decisions of this Court. The effect of their action was, not only to overrule our opinion, but practically to reverse our decree. For of what avail was the right decreed by us in favor of the city, to regulate slaughtering and to designate places therefor, if persons complying with those regulations, could be enjoined by the United States. Circuit Court from conducting the business at such places? It is obvious that the entire subject matter of the injunction suit was embraced in, and disposed of by, our decree; and that though the Butcher's Union Company, was not nominally a party, its rights and those of all persons to transact the business of slaughtering in this city, being subsidiary to, and springing directly from the right of the city, were necessarily involved in and protected by our decree.

With the utmost respect for the judges of the circuit court and without disputing their right to decide such questions according to their own views, we are bound to say that their proceedings in this suit are not in accord with the views often expressed by the Supreme Court of the United States, and carefully observed by us, touching the relations between the co-ordinate jurisdictions exercised by the Federal and State Courts.

We refer to Peck vs. Jenneso, 7 How. 612; Taylor vs. Carryl, 20 How, 595; Taylor vs. Taintor, 16 Wall. 370; New Orleans vs. Steamship Co.. 20 Wall. 392; Memphis vs. Dean, 8 Wall. 64.

As evidence of the scrupulous respect which this Court observes towards the rightful jurisdiction of the circuit court, we refer to State ex rel. Newman vs. Burke, 35 Ann. 185. We make these remarks in no other spirit than from the desire to promote in future the observance (to use the language of the Supreme Court of the United States in Taylor vs. Carryl) "of such principles and methods of procedure as shall serve to conciliate the distinct and independent tribunals of the States and of the Union, so that they may co-operate as harmonious members of a judicial system co-extensive with the United States, and submitting to the paramount authority of the same constitution, laws and federal obligations."

But the ground on which we rest our conclusion on the question of probable cause is, that our decree in the suit to which the defendant corporation was a party was, until reversed, the law to it so far as the subject-matter thereof is concerned; that the prosecution of a suit which had no foundation except in the assumption that our decree was not law, was without probable cause; and that neither the advice of counsel nor the opinion of judges of a co-ordinate court that our decree was error, could furnish any cause whatever for the prosecution of such suit.

On the question of legal malice, the entire absence of probable cause is an important factor in its solution, but the record abundantly suggests and sustains the existence of the dominant motive which prompted the suit, viz: the desire and determination to maintain its enjoyment of a profitable monopoly and to prevent competition therein, regardless of questions of legal rights as expounded by the decree of this Court, and without awaiting the correction of any error which might exist therein by the only tribunal competent to do so. The force of this motive is apparent from the enormous profits and dividends earned and declared by the company; from the fact that the market value of its

stock rose between ten and fourteen dollars a share on the issuance of the injunction by the circuit court, and fell about as much when the United States Supreme Court reversed the decree; and that shortly after the latter decision the company reduced its tariff of charges by about twenty five *per cent.*

But the motive is rendered yet more apparent by the fact that, when the appeal from this Court was about to be reached on the docket of the United States Supreme Court, the company dismissed it, thus postponing the decision until the later appeal in the injunction case could be reached.

Such a motive constitutes legal malice and completes the elements necessary to sustain the charge of malicious prosecution.

We conclude that plaintiff is entitled to recover the damages occasioned to it either by the wrongful issuance of the injunction or by the malicious prosecution of the suit.

The effort of defendant to avert liability on the ground that plaintiff was already enjoined in other proceedings before the State courts, cannot avail, because under our decision in 33 Ann. 930, those injunctions could have been released on bond. It was only the injunction in the Federal court that placed it out of the power of the plaintiff to prosecute its enterprise. Nor is any inference hostile to plaintiff's claim to be drawn from its delay or failure to bond, because the federal suit rendered the bounding useless.

The estoppel opposed to plaintiff's claim as resulting from its judicial allegations in the suit against Howell et al., decided and reported in 37 Ann. 280, must be overruled. It is true that in the suit referred to, the plaintiff did allege that part of the damages now claimed resulted from the injunction issued in the suit of Howell vs. the Butchers' Union Company; but in the same suit defendant denied judicially that claim, on the ground of the pendency of its federal injunction. So that, on the question of estoppel the parties are equal, and, inasmuch as the defendant was the author of both injunctions, it cannot escape liability on such a plea.

We cannot sustain the contention of defendant that the damage to plaintiff's property had all occurred prior to the institution of the federal suit. No doubt some injury had resulted, but the building had not then fallen, and, but for the insurmountable obstacle opposed by that suit, it might have been saved and the disastrous sale averted.

The efforts of defendant to show that, in any event, the enterprise of plaintiff would have been abortive and that no profits would have accrued, are not sustained to our satisfaction by the evidence.

All these matters have been considered by the jury, and we are not disposed to disturb their verdict, which, though of considerable amount, is small in comparison with the profits derived by defendant from the illegal perpetuation of its monopoly during several years after it had been effectively destroyed by the organic law of the State.

On the whole, we think justice has been done.

Judgment affirmed.