# CRESCENT CITY LIVE STOCK COMPANY *v.* BUTCH-ERS' UNION SLAUGHTER–HOUSE COMPANY.

## ERROR TO THE SUPREME COURT OF LOUISIANA.

Submitted January 6, 1887. — Decided January 24, 1887.

According to the law and practice of Louisiana, the Supreme Court of that state, in cases brought before it by appeal from inferior courts, determines the matter in controversy, as presented by the record, both as to fact and law, without regard to the particular rulings of the courts below, and its opinion, showing the grounds of its judgment, constitutes part of the record to be reviewed in this court, upon writ of error, when the question for determination is whether the Supreme Court of the state decided a Federal question, necessary to the decision of the case, without respect to the rulings of the inferior state court.

In Louisiana, an action for malicious prosecution is founded on the principles, and is subject to the defences, established by the common law; and in order to sustain it, it is necessary to show: (1) that the suit had terminated unfavorably to the prosecutor; (2) that in bringing it the prosecutor had acted without probable cause; (3) that he was actuated by legal malice, that is, by improper or sinister motives; and that these three elements concur.

The question of probable cause is a question of law, where the facts are undisputed; and the judgment of the court, in favor of the plaintiff, is conclusive proof of probable cause for the prosecution of the suit alleged to be malicious, notwithstanding its subsequent reversal by an appellate court, unless it is shown to have been obtained by means of fraud. This rule seems to reconcile the apparent contradiction in the authorities, is well grounded in reason, fair and just to the parties, and consistent with the principle on which the action for malicious prosecution is founded.

The judgments and decrees of the circuit courts of the United States, sitting in a particular state, are to be accorded in the courts of that state, whether as the foundation of an action, or of a defence, either by plea or in proof, such effect, and such effect only, as would be accorded in similar circumstances to the judgments and decrees of a state tribunal of equal authority; and whether such due effect has been given by a state court to a judgment or decree of a court of the United States is a Federal question within the jurisdiction of this court, on a writ of error to the Supreme Court of the state.

The decree of the Circuit Court of the United States, relied on by the plaintiff in error in this case, as a defence, was sufficient evidence of probable cause for the prosecution of the suit, notwithstanding its rever-

sal, on appeal, by this court. It does not detract from its effect that in another previous suit, between the plaintiff in error and another defendant, the Supreme Court of Louisiana had decided the questions of law on which alone his right depended adversely to him.

THIS was an action to recover on a bond. The case which makes the Federal question is stated in the opinion of the court.

*Mr. Assistant Attorney General Maury* and *Mr. Robert Mott* for plaintiffs in error.

*Mr. E. Howard McCaleb* and *Mr. B. R. Forman* for defendant in error.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

This is a writ of error bringing into review a judgment of the Supreme Court of the State of Louisiana, reported in 37 La. Ann. 874. The Federal question arising upon the record presented for our consideration is, whether the Supreme Court of Louisiana in its determination of the case gave due effect to a certain decree of the Circuit Court of the United States for the Eastern District of Louisiana, in a previous litigation between the same parties. That question is presented upon the following case.

The plaintiff in error is a corporation created by the laws of Louisiana, which, by an act of the legislature of that state, passed March 8, 1869, was invested with the sole and exclusive privilege of conducting and carrying on the live-stock landing and slaughter-house business within the city of New Orleans and the parishes of Orleans, Jefferson, and St. Bernard. The validity of this monopoly was sustained by the decision of this court in the *Slaughter-House Cases*, 16 Wall. 36, on the ground that this grant of exclusive right or privilege was a police regulation for the health and comfort of the people within the power of the state legislature, and not in violation of any provision of the Constitution of the United States. The company continued thenceforward to use and enjoy its exclusive

privileges until the adoption by the people of Louisiana of a new state constitution in the year 1879. That constitution contained the following articles:

" ARTICLE 248. The police juries of the several parishes, and the constituted authorities of all incorporated municipalities of the State, shall alone have the power of regulating the slaughtering of cattle and other live-stock within their respective limits; provided no monopoly or exclusive privilege shall exist in this state, nor such business be restricted to the land or houses of any individual or corporation; provided the ordinances designating places for slaughtering shall obtain the concurrent approval of the board of health or other sanitary organization."

" ARTICLE 258. The monopoly features in the charter of any corporation now existing in the State, save such as may be contained in the charters of railroad companies, are hereby abolished."

The city of New Orleans, by ordinances adopted in 1881, proceeded to declare, under Art. 248 of the constitution, within what limits in the parish of Orleans animals, intended for food, might be slaughtered, in which the Board of Health of the State of Louisiana concurred. In March, 1880, the Butchers' Union Slaughter-House and Live-Stock Landing Company, the defendant in error, became incorporated under the General Law of Louisiana, and was authorized by its charter " to erect, at any point or place in the parish of Orleans, wharves, stables, sheds, yards, and buildings necessary to land, stable, shelter, protect, and preserve all kinds of horses, mules, cattle, and other animals, for the purpose of carrying on the live-stock landing and slaughter-house business, and for the purpose of sheltering and protecting all such cattle or other animals which may be sent to said company destined for slaughter; and the said company shall, as soon as practicable, build and complete a slaughter-house; also a sufficient number of sheds and stables and other buildings as may be deemed necessary for the carrying on said slaughtering business."

This company having begun to acquire the necessary plant for conducting the live-stock and slaughtering business, in pur-

suance of its charter, the plaintiff in error, on the 23d of November, 1881, filed its bill in the Circuit Court of the United States for the Eastern District of Louisiana against the defendant in error, setting up its exclusive right and privilege as claimed by it under its original charter and grant, alleging that the defendant was about to violate the same, and praying for an injunction to restrain that company from carrying out its purpose. On the 29th of December, 1881, after notice and hearing, the judges of that court granted the injunction as prayed for *pendenté lite*. On final hearing on the 8th of May, 1882, this injunction was made perpetual. On May 5, 1884, this decree of the Circuit Court was reversed by this court by a decision reported in 111 U. S. 746, on the ground that the exclusive right originally granted to the plaintiff in error was valid only as an exercise of the police power of the State, and was of that character, having reference to the public health, that it could not be made the subject of contract, protected against subsequent legislation by the Constitution of the United States.

In granting the preliminary injunction referred to, the plaintiff in error was required to and gave an injunction bond in the sum of $8000, with Bertrand Saloy as surety, reciting the allowance of the injunction *pendente lite*, and conditioned to pay to the defendant in said injunction all such damages as it might suffer or had suffered in consequence thereof. The present action was begun in the Civil District Court for the Parish of Orleans on May 28, 1884, by the defendant in error against the plaintiff in error and Bertrand Saloy; by a petition in which a recovery is sought upon the bond against the defendants *in solido* for the sum of $8000, with five per cent. interest from judicial demand for a breach of its condition, and against the company alone for the further sum of $70,000 damages, with five per cent. interest from the date of the verdict, on the alleged ground of a malicious prosecution by the complainant therein of the said bill in equity for an injunction. This cause came on for trial by a jury when there was a verdict against both defendants for $6588.80, with interest, and against the Crescent City Live-Stock Landing and Slaughter-House

Company alone, upon the plea of malicious prosecution, for the sum of $12,500 damages, and the further sum of $2500 attorneys' fees. Upon the trial the defendant relied upon the decree of the Circuit Court of the United States, granting and perpetuating the injunction, as conclusive proof of probable cause for the institution and prosecution of the suit complained of. The rulings of the Civil District Court upon this defence are set out in several bills of exception. In one of them it appears that the judge left it to the jury to determine whether the decree of the Circuit Court constituted probable cause or not, adding that in his opinion it was both remarkable and extraordinary, and, as explanatory of that, the bill of exceptions signed by him contains the following statement: "I described the action of the Federal court as 'remarkable and extraordinary,' because it set at naught the decisions of the state courts of Louisiana, of the Supreme Court of Louisiana, set at defiance the positive mandate of the state constitution, and because it was held by the unanimous Supreme Court of the United States to have involved a usurpation of jurisdiction; such action was truly 'remarkable and extraordinary,' though not without deplorable precedent."

It also appears that the defendants requested the judge to charge the jury as follows:

"A plaintiff, whose asserted right was conferred by an act of legislature and has been in force for a number of years, has a right to test the legality of a subsequent repeal of said right, when the validity of such repeal or modification has not been finally settled, and the plaintiff is advised by competent counsel that the repeal is invalid. In such a case the plaintiff has probable cause for asserting his rights and instituting an action for such purpose. If, in the action instituted, the lower court being the Circuit Court of the United States, presided over by two judges, render a judgment in favor of the plaintiff, the existence of probable cause for instituting such suit is demonstrated by the finding of the judges of the Circuit Court, although their judgment was reversed on appeal."

This charge the judge refused to give, on the ground that it was unsound in law. Judgment was rendered on the verdict

February 24, 1885, and the cause was removed by a suspensive appeal to the Supreme Court of Louisiana for the final decision of that court, by which, on December 14, 1885, it was affirmed.

It is contended by counsel for the defendant in error, that in examining the record in this case, this court will only consider the opinion and judgment of the Supreme Court of Louisiana in order to ascertain if the authority relied upon by the plaintiff in error was wrongfully disregarded by that tribunal, and that without reference to the rulings of the inferior court, the opinion of the Supreme Court being made a part of the record by law for that purpose. Such appears to be the law of Louisiana as recognized by the decisions of this court. Louisiana Code Pract. Art. 905; *Parks* v. *Turner,* 12 How. 39, 43; Hennen's Digest, p. 92, No. 3; *Cousin* v. *Blanc's Executors,* 19 How. 202; *Grand Gulf Railroad and Banking Company* v. *Marshall,* 12 How. 165; *Murdock* v. *City of Memphis,* 20 Wall. 590 ; *Crossley* v. *City of New Orleans,* 108 U. S. 105; *Caperton* v. *Bowyer,* 14 Wall. 216.

It must, therefore, be conceded that the sole question to be determined is, Did the Supreme Court of Louisiana, in deciding against the plaintiffs in error, give proper effect to the decree of the Circuit Court of the United States, subsequently reversed by this court ?

It is argued by counsel for the defendant in error that this does not embrace any Federal question ; that the effect to be given to a judgment or decree of the Circuit Court of the United States sitting in Louisiana by the courts of that state is to be determined by the law of Louisiana, or by some principle of general law as to which the decision of the state court is final; and that the ruling in question did not deprive the plaintiffs in error of "any privilege or immunity specially set up or claimed under the Constitution or laws of the United States." But this is an error. The question whether a state court has given due effect to the judgment of a court of the United States is a question arising under the Constitution and laws of the United States, and comes within the jurisdiction of the Federal courts by proper process, although, as was said by this court in *Dupasseur* v. *Rochereau,* 21 Wall. 130, 135,

"no higher sanctity or effect can be claimed for the judgment of the Circuit Court of the United States rendered in such a case, under such circumstances, than is due to the judgments of the state courts in a like case and under similar circumstances." *Embry* v. *Palmer*, 107 U. S. 3. It may be conceded, then, that the judgments and decrees of the Circuit Court of the United States, sitting in a particular state, in the courts of that state, are to be accorded such effect, and such effect only, as would be accorded in similar circumstances to the judgments and decrees of a state tribunal of equal authority. But it is within the jurisdiction of this court to determine, in this case, whether such due effect has been given by the Supreme Court of Louisiana to the decrees of the Circuit Court of the United States here drawn in question.

The decree of the Circuit Court was relied upon in the state court as a complete defence to the action for malicious prosecution, on the ground that it was conclusive proof of probable cause. The Supreme Court of Louisiana, affirming the judgment of the inferior state court, denied to it, not only the effect claimed, but any effect whatever.

It is conceded that, according to the law of Louisiana, the action for a malicious prosecution is founded on the same principles, and subject to the same defences, as have been established by the common law prevailing in the other states.

In the case of *Hubgh* v. *New Orleans and Carrollton Railroad*, 6 La. Ann. 495; *S. C.* 54 Am. Dec. 565, it was said that "the dispositions of article 2294 are found in the Roman and Spanish laws; so far from being new legislation, that article embodies a general principle as old as the science of jurisprudence itself, and it must still be understood with the limitations affixed to it by the jurisprudence of Rome and Spain. Domat Lois Civiles, tit. Domages causés par des fautes, p. 180, par. 1." In the same case the court said on a rehearing: "The article 2294 of our Code provides that every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it. The provisions of this article, however general and comprehensive its terms may be, are found more than once recited in terms equally general and comprehensive

in the laws of the fifteenth title of the seventh Partida. The article was inserted in the Code of 1809, at a time when the Spanish laws were in force. It was put and retained to this time in the Code, not for the purpose of making any change in the law, but because it was a principle which was in its proper place in a code; a principle which would be equally recognized as a necessary conservative element of society, and equally obligatory whether it was formally enacted in a code or not."

In the case of *Sénécal* v. *Smith*, 9 Rob. La. 418, 420, it had been previously decided that "in cases of this kind it is well settled that malice and the want of probable cause in the original action are essential ingredients. Malice may be expressly proved or it may be inferred from the total want of a probable cause of action; but malice alone, however great, if there be a probable cause upon which the suit or prosecution is based, is insufficient to maintain an action in damages for a malicious prosecution."

In the case of *Gould* v. *Gardner*, 8 La. Ann. 11, it was determined that the defendants in the case were not without probable cause for the arrest of the plaintiff, which was the ground of the action, because they acted by the advice of eminent and learned counsel, though his opinion was held to be erroneous. The court refer to the case of *Stone* v. *Swift*, 4 Pick. 389; *S. C.* 16 Am. Dec. 349, in Massachusetts, and that of *Foshay* v. *Ferguson*, 2 Denio, 619, in New York, as sufficient authority in support of their opinion, and add as follows: "Our codes and statutes have not provided any rules to guide us on the trial of such actions, and we are governed in the absence of positive legislation by the rules laid down in the authorities quoted, because we consider them just and reasonable in themselves." In the opinion in the present case, the Supreme Court of Louisiana say that to sustain the charge of malicious prosecution it is necessary to show: "1st, that the suit had terminated unfavorably to the prosecutor; 2d, that in bringing it the prosecutor had acted without probable cause; 3d, that he was actuated by legal malice, *i.e.*, by improper or sinister motives. The above three elements must concur."

And when there is no dispute of fact, the question of probable cause is a question of law for the determination of the court. *Stewart* v. *Sonneborn*, 98 U. S. 187, 194. Want of probable cause and the existence of malice, either express or implied, must both concur to entitle the plaintiff in an action for a malicious prosecution to recover. So that if probable cause is shown, the defence is perfect, notwithstanding the defendant in instituting and carrying on the action may have been actuated solely by a motive and intent of malice. If he had probable cause to institute his action, the motives by which he was actuated and the purposes he had in view are not material.

How much weight as proof of probable cause shall be attributed to the judgment of the court in the original action, when subsequently reversed for error, may admit of some question. It does not appear to have been judicially determined in Louisiana. In the case of *Griffis* v. *Sellars*, 3 & 4 Devereux & Battle Law, 177; *S. C.* 31 Am. Dec. 422, Ruffin, C. J., said "that probable cause is judicially ascertained by the verdict of the jury and judgment of the court thereon, although upon an appeal a contrary verdict and judgment be given in a higher court." In *Whitney* v. *Peckham*, 15 Mass. 243, such a judgment was held to be conclusive in favor of the existence of probable cause. To the same effect is *Herman* v. *Brockerhoff*, 8 Watts, 240, in an opinion of Chief Justice Gibson. The decision in the case of *Whitney* v. *Peckham, ubi supra*, however, was questioned by the Supreme Court of New York in the case of *Burt* v. *Place*, 4 Wend. 591, 598, where Marcy, J., delivering the opinion of the court, said that the Massachusetts decision rested entirely upon *Reynolds* v. *Kennedy*, 1 Wilson, 232, which had been qualified by the decision of Eyre, Baron of the Exchequer, in *Sutton* v. *Johnstone*, 1 T. R. 493, 505, and by what was said by Lord Mansfield and Lord Loughborough in the same case, which came before them on a writ of error. 1 T. R. 544 *et seq.* The effect of these English authorities, as stated by Marcy, J., in *Burt* v. *Place, ubi supra*, is as follows: " That if it appears by the plaintiff's own declaration that the prosecution, which he charges to have been malicious, was before

a tribunal having jurisdiction, and was there decided in favor of the plaintiff in that court, nothing appearing to fix on him any unfair means in conducting the suit, the court will regard the judgment in favor of the prosecution satisfactory evidence of probable cause."

In that case the judgment relied upon by the defendant was held not to be conclusive. The reason is stated to be as follows: "Though the plaintiff admits in his declaration that the suits instituted before the magistrate by the defendant were decided against him, he sufficiently countervails the effect of that admission by alleging that the defendant, well knowing that he had no cause of action, and that the plaintiff had a full defence, prevented the plaintiff from procuring the necessary evidence to make out that defence by causing him to be detained a prisoner until the judgments were obtained, and by alleging that the imprisonment was for the very purpose of preventing a defence to the actions."

Commenting on this case, the Court of Appeals of Kentucky in *Spring* v. *Besore*, 12 B. Mon. 551, 555, say: "The principle settled in the case last cited we understand to be that such a judgment will not in every possible state of case be deemed to be conclusive of the question of probable cause; but that, like judgments in other cases, its effect may be destroyed by showing that it was procured by fraud or other undue means." That court proceeds to state the rule as follows: "The correct doctrine on the subject is, in our opinion, that the decree or judgment in favor of the plaintiff, although it be afterwards reversed, is, in cases where the parties have appeared and proof has been heard on both sides, conclusive evidence of probable cause, unless other matters be relied upon to impeach the judgment or decree and show that it was obtained by fraud; and, in that case, it is indispensable that such matter should be alleged in the plaintiff's declaration; for, unless it be done, as the other facts which have to be stated establish the existence of probable cause, the declaration is suicidal. The plaintiff's declaration will itself always furnish evidence of probable cause when it states, as it must do, the proceedings that have taken place in the suit alleged to be malicious, and

shows that a judgment or decree has been rendered against the plaintiff. To counteract the effect of the judgment or decree and the legal deduction of probable cause, it is incumbent upon him to make it appear in his declaration that such judgment or decree was unfairly obtained, and was the result of acts of malice, fraud, and oppression on the part of the defendant, designed and having the effect to deprive him of the opportunity and necessary means to have defeated the suit and obtained a judgment in his favor."

The limitations upon the general principle declared in *Burt* v. *Place, ubi supra,* were followed by the Supreme Court of Maine, in *Witham* v. *Gowen,* 14 Maine, 362, and both decisions were referred to in the subsequent case of *Payson* v. *Caswell,* 22 Maine, 212, 226, where the court said: " In these two cases, we have instances of exceptions to the general rule, indicative of the general nature of the characteristics which might be expected to attend them; but the rule itself remains unimpaired. If there be a conviction before a magistrate having jurisdiction of the subject-matter, not obtained by undue means, it will be conclusive evidence of probable cause."

The propriety of this limitation of the rule seems to have been admitted by the Supreme Judicial Court of Massachusetts in *Bacon* v. *Towne,* 4 Cush. 217, 236, though in later cases it reiterated the broader rule as originally stated in *Whitney* v. *Peckham, ubi supra. Parker* v. *Huntington,* 7 Gray, 36; *S. C.* 56 Am. Dec. 455.

This seems to reconcile the apparent contradiction in the authorities, and states the rule, which, we think to be well grounded in reason, fair and just to both parties, and consistent with the principle on which the action for malicious prosecution is founded.

It is, perhaps, not material in this case to define the rule with precision, and to attempt to state with accuracy the precise effect to be given to a judgment or decree of the court as proof of probable cause under all circumstances, because in the present case the decree of the Circuit Court of the United States was adjudged to be entitled to no effect whatever as evidence in support of the defence of the plaintiff in error.

. The ground on which the Supreme Court of Louisiana pro-
ceeded, as stated in its opinion, is explained to be as follows:

Shortly after the adoption of the Constitution of 1879, the
plaintiff in error instituted a suit in the state court of Louisiana,
which was finally decided by the Supreme Court of the state in
*Crescent City Slaughter-House Co.* v. *The City of New Orleans*,
33 La. Ann. 934. The object of the suit was to obtain a writ
of injunction "restraining the city of New Orleans from enter-
taining any petitions for, and from ever designating any place
or places for, the landing, yarding, sheltering, or slaughtering
any animal or animals intended for human food in the parishes
of Orleans, Jefferson, and St. Bernard, other than at the
slaughter-houses and premises of the petitioner, and above the
United States barracks on the east or left bank of the Missis-
sippi River, and above the depot of Morgan's Louisiana and
Texas Railroad, on the west or right bank or side of the
Mississippi River."

. There was a judgment dismissing the plaintiff's suit, and dis-
solving the injunction provisionally granted, from which the
plaintiff appealed to the Supreme Court of Louisiana. That
court affirmed the judgment, holding that the articles of the
new constitution had destroyed the monopoly claimed by the
plaintiff, and that this was a valid exercise of power on the
part of the State of Louisiana, not in violation of any provision
of the Constitution of the United States. Speaking of the ac-
tion of the present plaintiff in error in bringing that suit, the
Supreme Court of Louisiana, in its opinion in the present case,
37 La. Ann. 874, 876, says: "The questions involved were se-
rious and important. Defendant's right to assert judicially
the validity of his contract, and to resist by all legal remedies
the execution of any state law which impaired it, was unques-
tioned. The question involved was Federal in its nature, and
the courts of the state, and perhaps of the United States, were
equally open to it for the vindication of its alleged right; and,
in either forum, it was entitled to appeal to the Supreme Court
of the United States for the final and conclusive settlement of
the question." And, referring to the judgment in that suit, it
also says: "It is important to estimate the scope and effect of

this decision. It was an authoritative judicial determination, by a competent court, of questions submitted to it at the instance of the company itself. In denying the rights claimed by the company, and in affirming the right of the city to regulate slaughtering within her limits and to designate places for the conduct of such business, it necessarily affirmed the right of persons complying with such regulations to transact that business at such places, and denied the right of this company to interfere with them. If there was error in the decision, that error could be corrected by one tribunal only, the Supreme Court of the United States. Until the questions involved had been determined differently by that high tribunal, the decision of this court was entitled to be accepted as the law by this litigant. Technical principles of *lis pendens* and *res judicata* might not debar the company from prosecuting another suit against a different party involving the same subject-matter ; but if such suit rested exclusively upon the assertion of rights which this court had directly determined that the company did not possess, it could find no protection against the charge of being a malicious prosecution, save in the production of a decision of the Supreme Court of the United States holding that our opinion was error."

The following extracts from the same opinion are on the same point :

" We are bound to hold that there was entire absence of probable cause. The suit involved absolutely nothing but questions of law. Those identical questions had been submitted to this court by this very prosecutor in a case precisely analogous, and had been determined against it. It was thus authoritatively advised what the law was. If it was dissatisfied with the opinion, its remedy was clear by appeal to the United States Supreme Court, and it had actually availed itself of that remedy on writ of error which was pending and undetermined when this suit was brought. It must be carefully observed that, though the Butchers' Union Company was not technically a party to the suit against the city, the questions of right between it and the Crescent City Company were as directly involved as if it had been a party. If the city had the right to

regulate slaughtering within her limits, and to designate places for its lawful conduct, obviously persons complying with such regulations had the right to transact the business. If she had not that right, no person could lawfully slaughter elsewhere than at the old company's slaughter-house."

"But it is claimed that the prosecutor acted under the advice of counsel learned in the law. That is certainly true, and would ordinarily protect. But here the client was in possession of the opinion of this court on the very point in its own case, involving the same subject-matter. It had no need for advice of counsel. That advice was simply that the opinion of this court was error. Counsel had the undoubted right to entertain such opinion, and so to advise its client; the only lawful remedy under such advice consisted in an appeal to the United States Supreme Court. If it chose to act otherwise on such advice, it acted at its peril, and can take no protection therefrom. The only lawful action it could take under such advice had been already taken in the writ of error from the United States Supreme Court."

"Nor does the decision of the judges of the Circuit Court of the United States afford a better shield. They are not vested with authority to review or reverse the decisions of this court. The effect of their action was not only to overrule our opinion, but practically to reverse our decree. For of what avail was the right decreed by us in favor of the city, to regulate slaughtering and to designate places therefor, if persons complying with those regulations could be enjoined by the United States Circuit Court from conducting the business at such places? It is obvious that the entire subject-matter of the injunction suit was embraced in and disposed of by our decree; and that though the Butchers' Union Company was not nominally a party, its rights and those of all persons to transact the business of slaughtering in this city, being subsidiary to and springing directly from the right of the city, were necessarily involved in and protected by our decree." . . .

"But the ground on which we rest our conclusion on the question of probable cause is, that our decree in the suit, to which the defendant corporation was a party, was, until re-

versed, the law to it so far as the subject-matter thereof is concerned; that the prosecution of a suit which had no foundation, except in the assumption that our decree was not law, was without probable cause; and that neither the advice of counsel, nor the opinion of judges of a coördinate court that our decree was error, could furnish any cause whatever for the prosecution of such suit."

It is conceded by the Supreme Court of Louisiana, in this opinion, that its prior judgment in the case between the plaintiff in error and the city of New Orleans could not operate as an estoppel upon the principle of *res judicata*, in the suit which the plaintiff in error brought in the Circuit Court of the United States, the prosecution of which is charged against it as being malicious, because it was between different parties. It is also admitted that the judgment was not a final one, but by reason of the Federal question involved was subject to review and possible reversal by a writ of error from the Supreme Court of the United States. The prosecution of such a writ of error, which was in fact actually sued out but subsequently dismissed, is declared by the Supreme Court of Louisiana to be the only lawful course which the plaintiff in error had a right to pursue. The failure to prosecute that writ of error is charged against the plaintiff in error, so as not only to deprive him of the benefit of the defence of probable cause, but as sufficient proof of malice in the subsequent institution of his suit in the Circuit Court of the United States; and these consequences, in the opinion of the Supreme Court of Louisiana, are not alleviated by the admitted fact that the plaintiff in error acted under the advice of counsel. Notwithstanding such advice, the client itself, the Supreme Court of Louisiana declared, was bound at its peril to take notice of its legal rights as defined in that opinion of the Supreme Court of the state.

It is not shown in the present record on what grounds counsel proceeded in their advice, or the plaintiff in error in failing to prosecute the writ of error from that judgment. It will be observed that the only relief sought in that suit was a writ of injunction against the city of New Orleans from taking the preliminary steps under the ordinances of the city in reference

to entertaining petitions, and designating places, for the prosecution of the business of which it claimed to have a monopoly under its charter.

In a similar case of the *Crescent City Live-Stock Landing and Slaughter-House Company* v. *The Police Jury, Parish of Jefferson, Right Bank*, decided by the Supreme Court of Louisiana, 32 La. Ann. 1192, the plaintiff, who is the plaintiff in error herein, sought to enjoin the defendant from granting permission to any one to establish a slaughter-house in the parish of Jefferson, on the ground that such a grant of authority would be in violation of the exclusive rights given to it under its charter; a case precisely analogous to that between the plaintiff in error and the city of New Orleans, 33 La. Ann. 934. In the case against the Police Jury of Jefferson Parish, the appeal and the petition of the plaintiff were dismissed. In disposing of the case, the court say, p. 1196: "The averments of the petition disclose a clear case of prematurity of complaint. It will be time enough for the plaintiff to apply for an injunction upon a sworn averment of proper facts if, *after* the police jury will have passed the resolution or given the permission, some party assumes to act upon that resolution and permission. For the determination of the motion to dismiss an opinion necessarily had to be expressed, not upon the merits, for none as yet exist, but upon the sufficiency of the sworn averment to justify the injunction."

It might, therefore, on the authority of this decision of the Supreme Court of Louisiana, be argued that the expression of its opinion in the case of *The Crescent City Slaughter-House Company* v. *The City of New Orleans*, 33 La. Ann. 934, was unnecessary to the decision of the cause, and *obiter dictum*, and for aught that appears counsel may have advised that a writ of error to reverse that judgment in the Supreme Court of the United States would fail on the ground that the record did not disclose the existence of a Federal question necessarily to be passed on; for it has been the uniform doctrine of this court that, where it appears that the judgment of the state court must be affirmed on other grounds disclosed in the record, it will not be reversed for an erroneous ruling of the state

court on a Federal question not necessary to the decision of the cause. *Murdock* v. *City of Memphis*, 20 Wall. 590, 634; *Jenkins* v. *Loewenthal*, 110 U. S. 222; *Erwin* v. *Lowry*, 7 How. 172; *Gibson* v. *Chouteau*, 8 Wall. 314.

However that may be, we are of the opinion, on other grounds, that the Supreme Court of Louisiana in this case erred in not giving due effect to the decree in question of the Circuit Court of the United States. The latter is a court coördinate to the Supreme Court of Louisiana in authority, and equal in dignity, being the highest Federal court sitting in that state, whose judgments and decrees are final and conclusive, subject only to review and reversal in the Supreme Court of the United States. In the case in which the decree complained of was pronounced the Circuit Court did not act without jurisdiction, the subject-matter of the suit being a controversy arising under the Constitution of the United States. The argument of the counsel for the defendant in error to the contrary, which deduces what the judge of the inferior court in his charge to the jury alleged to be a usurpation of jurisdiction, merely from the fact that its decree was reversed by this court, could only be true if the general proposition were true that all judgments reversible for error are void for want of jurisdiction. Having jurisdiction of the parties and of the subject-matter of the suit, the judges of the Circuit Court were bound to declare the law of the case between the parties in the light of their own convictions, and under a sense of their official responsibilities, not being under any legal obligation to regard the decision of the Supreme Court of Louisiana upon a question of Federal law as controlling by reason of its authority, whatever respect and deference they might see fit to accord to it by way of persuasion and argument. And their judgment or decree when rendered is binding and perfect between the parties until reversed, without regard to any adverse opinion or judgment of any other court of merely concurrent jurisdiction. Its integrity, its validity, and its effect are complete in all respects between all parties in every suit and in every forum where it is legitimately produced as the foundation of an action, or of a

defence, either by plea or in proof, as it would be in any other circumstances. While it remains in force it determines the rights of the parties between themselves, and may be carried into execution in due course of law to its full extent, furnishing a complete protection to all who act in compliance with its mandate, and even after reversal it still remains, as in the case of every other judgment or decree in like circumstances, sufficient evidence in favor of the plaintiff who instituted the suit or action in which it is rendered, when sued for a malicious prosecution, that he had probable cause for his proceeding.

Neither was there anything in the situation or conduct of the plaintiff in error that could deprive it of the protection of the decree of the Circuit Court of the United States in this action. The fact that it had exercised an election to bring its suit against the city of New Orleans in the state court could have no legal effect upon its right afterwards to bring a similar suit against other parties in the Circuit Court of the United States. Its right of choice was not exhausted by a single exercise, and justified it in subsequently invoking the jurisdiction of the courts of the United States, no matter with what motive or for what purpose. As we have already seen and declared, the existence of express malice, however flagrant or unjustifiable, could not affect the exercise of this right, or deprive the party of the benefit of the judgment of the court as proof of a probable cause for the institution of the suit. Neither was the plaintiff in error bound to reject the advice of its counsel on the ground of its own presumed knowledge of the law, as declared in the opinion of the Supreme Court of Louisiana in the prior suit. It had a right to test the soundness of that judgment by seeking the jurisdiction of a coördinate court, whose decision would be of equal authority and dignity with that of the Supreme Court of the State, both being final between the parties to the particular litigation until reversed by the Supreme Court of the United States. The plaintiff in error owed no allegiance to the courts of the state greater than that due to the courts of the United States; it had an equal right in both to vindicate what it claimed to

be its rights by remedies appropriate to that purpose, and against all parties infringing them. The fact that the Supreme Court of Louisiana had spoken first gave no additional weight to its decision. Whatever deference may be due to the decisions of the state court of final resort in every case in which it has spoken, and whatever may be the respect to which its decisions upon questions of purely local law established as rules of property may be entitled, they are not authority binding upon the courts of the United States, sitting even in the same state, where the questions involved and decided relate to rights arising under the Constitution and laws of the United States.

But the rule in question, which declares that the judgment or decree of a court having jurisdiction of the parties and of the subject-matter, in favor of the plaintiff, is sufficient evidence of probable cause for its institution, although subsequently reversed by an appellate tribunal, was not established out of any special regard to the person of the party. As we have already seen, it will avail him as a complete defence in an action for a malicious prosecution, although it may appear that he brought his suit maliciously for the mere purpose of vexing, harassing, and injuring his adversary. The rule is founded on deeper grounds of public policy in vindication of the dignity and authority of judicial tribunals constituted for the purpose of administering justice according to law, and in order that their judgments and decrees may be invested with that force and sanctity which shall be a shield and protection to all parties and persons in privity with them. The rule, therefore, has respect to the court and to its judgment, and not to the parties, and no misconduct or demerit on their part, except fraud in procuring the judgment itself, can be permitted to detract from its force. It is equally true and equally well settled in the foundations of the law that neither misconduct nor demerit can be imputed to the court itself. It is an invincible presumption of the law that the judicial tribunal, acting within its jurisdiction, has acted impartially and honestly. The record of its proceedings imports verity; its judgments cannot be impugned except by direct process from

superior authority. The integrity and value of the judicial system, as an institution for the administration of public and private justice, rests largely upon this wholesome principle.

That principle has been disregarded in the present case by the Supreme Court of Louisiana in failing to give due effect to the decree of the Circuit Court of the United States as sufficient evidence in support of the defence of the plaintiff in error in this action, so far as it is an action for the recovery of damages for a malicious prosecution.

*The judgment of the Supreme Court of Louisiana on the bond itself, for damages occasioned by its breach, against the principal and surety, is not attacked in this proceeding. It is so far affirmed. But that part which constitutes a judgment against the Crescent City Live-Stock Landing and Slaughter-House Company solely, for damages for the malicious prosecution, is reversed, and the cause is remanded for further proceedings therein not inconsistent with this opinion; and it is so ordered.*