James Burley ROWE, Jr., III, Appellant,

v.

J. K. ZELLNER, Jr., et al., Appellees.

No. 22078.

United States Court of Appeals
Fifth Circuit.

Nov. 22, 1965.

Rehearing Denied Dec. 28, 1965.

F. R. Raley, Trammell F. Shi, Macon, Ga., for appellant.

George C. Grant, Macon, Ga., for appellees.

Before TUTTLE, Chief Judge, and BELL and COLEMAN, Circuit Judges.

TUTTLE, Chief Judge.

This is an appeal from a dismissal of appellant's diversity suit for damages for alleged malicious prosecution, upon motion for summary judgment, filed by the appellees, the defendants in the trial court.

The pleadings and the affidavits in opposition to the motion for summary judgment, upon which appellant has a right to rely on motion for summary judgment make out the following case for the appellant.

Rowe, who had authority from his father to sign checks on his father's bank account, was persuaded by defendant Zellner to try out and ultimately to purchase an automobile that was held for sale by Zellner's company. Rowe made a down payment on the automobile by signing his name to a check drawn on his father's bank account in the sum of $654.00. When his father learned of the fact that his son had given this check, they had a serious disagreement and argument about it, whereupon several days after acquiring the automobile appellant drove the car away and went to the State of Florida. Before the son left with the car, the father called on Zellner and complained to Zellner of his having sold the automobile to the son, and he asked Zellner to take the automobile back, which request Zellner refused. Thereupon Rowe, Sr. telephoned the bank and found that the check had been presented but had not yet been paid. He then telegraphed a "stop payment" order to the bank. This order was obeyed and the check was turned down, being returned to the depositor with a notation, "Forgery." Upon the non-payment of the check, Zellner then took the matter up with the Solicitor General, the local prosecuting officer, who then presented him to the Grand Jury to give testimony, which resulted in the issuing of an indictment for larceny of the automobile and a second indictment for forgery. After the indictment was issued, but before Rowe was arrested, the father and mother brought the automobile back to the State of Georgia and turned it over to local police, who in turn turned it over to Zellner, who later sold it.

In the meantime Rowe's mother protested to Zellner for having her son arrested for stealing the car. She said, "You know he didn't steal that car. You let him keep it for three weeks and when he did try to return it you insisted that he give it a further trial." Whereupon Mr. Zellner said, "But he gave me a check and I've got to get him on something because the check wasn't any good." Mrs. Rowe then testified that "he told me that the check was not

forged, that there was money in the bank, the boy signed his own name and so it was just a 'stop payment' check. He said, 'I have to get him for something in order to collect my money.' He then said, 'If Mr. Rowe [the father] will pay me the amount of the check I will drop the warrant.' "

The father testified, "I had given the boy permission to write checks on my account, but did not mean for him to write one that large. I told Mr. Zellner he had better return my money and get his car. This he refused to do * * * I urged Mr. Zellner to pick up the car, as it was still in Forsyth at that time. He refused * * * James left home after a serious disagreement about his purchase of the car. He still did not know that I had stopped payment on the check."

The mother and father both talked to an attorney in Forsyth who said he would handle the case for $200.00, but apparently no agreement was made, because when the case was called for trial Rowe refused to plead guilty upon the lawyer's urging. Nevertheless, the same lawyer was appointed to represent him and when the case was called for a plea the lawyer announced "Guilty," whereupon Rowe himself arose in the courtroom and announced, "Not guilty." Nevertheless he was adjudged guilty and then sentenced to five years in the state penitentiary.

Thereafter, on an allegation of these facts, a Georgia state court ordered Rowe released on habeas corpus. This, however, did not occur for some 25 months after his first arrest. In explaining the case to the local prosecuting attorney, Zellner made no comment to the effect that the father had authorized appellant to sign checks on his account, or that this was merely a "stop payment" case, or that Zellner had agreed to stop the prosecution if payment was made.

Of course, the facts as presented by appellee differ materially, although as to some of the essential facts asserted by appellant there is no dispute. Zellner's affidavit stated categorically that he told the facts as they actually occurred in his statement to the prosecuting attorney and to the Grand Jury, and that, therefore, the indictment that followed, together with the plea of guilty, freed him of any charge of want of probable cause. However, it is to be noted that there is no dispute in the record about the nature of the proceedings in the state criminal court when the appellant Rowe claims that he stood up and sought to plead "not guilty" when his case was called for trial. Nor does there seem to be any dispute about the fact that later when the forgery case was called up, Rowe had no lawyer and merely signed papers including a plea of guilty which was not explained to him.

█ The trial court, and the appellees here, seek to sustain the summary judgment on the proposition that where a prosecutor who is later charged with malicious prosecution presents his story to the Grand Jury, and an indictment is issued, followed by a conviction, either after trial or upon a plea of guilty, the existence of probable cause for the prosecution is conclusively established. That this is the general rule is undoubted. See Georgia Loan & Trust Company v. Johnston, 116 Ga. 628, 43 S.E. 27; Hartshorn v. Smith, 104 Ga. 235, 30 S.E. 666; Short and Co. v. Spragins, Buck & Company, 104 Ga. 628, 629, 30 S.E. 810.

As pointed out by the trial court, such conviction is still held to be conclusive evidence of probable cause even where such conviction is subsequently reversed. This is the rule stated in Georgia Loan & Trust Co. v. Johnston, supra, 116 Ga. at page 631, 43 S.E. 27, and Crescent City Live Stock Landing & Slaughter-House Co. v. Butchers' Union Slaughter-House & Live Stock Landing Co., 120 U.S. 141, at p. 145, 7 S.Ct. 472, 30 L.Ed. 614.

██ The trial court considered the occurrence in the state criminal trial as a plea of guilty, which might be subject to a later motion by Rowe to withdraw the plea and enter a plea of not guilty, if he was dissatisfied with what occurred.

This, we conclude, is the weakness of the appellee's position. It is here alleged and supported by the affidavit by appellant, that the Georgia Superior Court, by issuing its writ of habeas corpus, vacated and set aside Rowe's conviction. Under the Georgia law it is clear that such action by the Georgia courts must be based on something more than a determination that there was error committed by the trial court. As has been repeatedly stated by the Georgia Supreme Court, "A discharge under a writ of habeas corpus, after a plea of guilty by one accused of crime, cannot be granted except in cases where the judgment is absolutely void, for the reason that the function of the writ in criminal cases is not to test the truth of any fact essential to the establishment of guilt, but only to discharge one convicted of crime where the judgment is wholly void." Dean v. Balkcom, 214 Ga. 222, 104 S.E.2d 126, citing Kinman v. Clark, 185 Ga. 328, 330, 195 S.E. 166, which case in turn cites many earlier Georgia cases.

Here, then, the Court is not faced with a case where an indictment is followed by a conviction either following trial *or a plea of guilty*, because here the Georgia court, according to the undisputed affidavit of appellant, has held that there was no effective plea of guilty, and that the proceedings in the Georgia Criminal Court were utterly void.

We then come to the question whether there is an issue of fact as to whether appellee Zellner fairly and with probable cause acted as prosecutor before the Grand Jury. While he, of course, stoutly denies the fact, the record makes it plain that the trial court had before it an affidavit on Rowe's behalf that Zellner did not have probable cause for claiming that the car had been stolen or that the check was forgery, but that, on the other hand, he knew that the indicted man had acted in good faith by giving him a check on an account on which he had a right to draw and that the "stop payment" order was attributable to the father and did not prevent the passage of title to the son.

 We, of course, express no view as to the truth of these conflicting statements, but we do conclude that without the intervention of a conviction following trial or a "plea of guilty" in the sense in which the term is ordinarily used, there is no such conclusive determination that the prosecutor acted with probable cause as to entitle the prosecutor to be discharged in this civil suit on a motion for summary judgment.

The judgment is reversed and the case remanded for further proceedings not inconsistent with this opinion.