OSANDER BISHOP, APPELLANT, *v.* CALEB V. STEBBINS
AND OTHERS, RESPONDENTS.

*Judgment creditor's action — right of a debtor to prefer one creditor — to transfer all his property to pay a* bona fide *debt — when a deduction of a fixed sum from the purchase-price, in consideration of an agreement by the purchaser to support a person whom the vendor is bound to maintain, is not fraudulent.*

A debtor has a right to prefer one or more of his creditors over the others, and so long as he exercises this right honestly and in good faith, his acts, whether the preference be created by sale or a pledge, are unimpeachable.

The fact that the transfers cover substantially all of the property of the debtor is not conclusive evidence of a fraudulent intent, but is only a circumstance to be weighed, among others, in determining the intent and purposes of the parties.

Upon the trial of this action, brought by a judgment creditor to set aside as

fraudulent a conveyance of real estate and a bill of sale of personal property, made in 1881, from one Caleb V. Stebbins of all his property to his son Andrew, it appeared that the vendor acquired title to the principal part of the land under the will of his father, which directed that his executor and his heirs should maintain the testator's son Warren according to his rank and condition in life, provided the said Warren should remain with the executor during the said Warren's natural life, but in case he should depart from the executor, then the latter was not to be accountable for anything on his account. Stebbins entered into possession under the will in 1844, and assumed the care and maintenance of Warren, who continued to reside with him down to the time of the transfer of the property in 1881, and thereafter he resided with Andrew, the vendee, down to the time of his (Warren's) death, which occurred in 1883. At the time of the transfer Warren was about seventy-six years of age, and was of feeble health and required extraordinary care and attention.

Andrew, in addition to the sum paid on the purchase, executed a bond to Caleb, agreeing to assume the responsibilities and liabilities of Caleb under the will, and to support and maintain Warren during his life in consideration of the sum of $1,000 to be paid to him, which sum was taken out of the purchase-price.

*Held,* that the sum retained was reasonable and that no fraud or fraudulent intent was evinced by the arrangement.

APPEAL from a judgment, entered upon the decision of the Special Term in Cortland county.

The action was brought by a judgment creditor of Caleb V. Stebbins to set aside a conveyance of real estate and a bill of sale of personal property, on the ground that the transfers were fraudulent and void as to creditors of Caleb V. Stebbins. The transfers were made on the 21st day of December, 1881. The plaintiff recovered a judgment against the debtor February 2, 1883, for $638.78, and issued an execution, which was returned wholly unsatisfied. The debt upon which the judgment was recovered accrued January 6, 1880. The transfers were made on December 21, 1881, by Caleb V. Stebbins to his son Andrew Stebbins, and covered all his property, consisting of a farm of 169 acres, situated in the town of Homer, for the sum of $5,920. The personal property was of the value and price of $987. The total sale, price and value amounted to $6,907.

Upon the real estate transferred there was a mortgage in favor of H. O. Jewett for $1,550, which the purchaser assumed. One Chittendon held a promissory note of $158, made by the vendor and indorsed by the vendee, which the vendee assumed as a part of the consideration for the transfers and subsequently paid.

The vendor derived the principal part of the farm through the will of his father, Titus Stebbins, of which will the vendor was appointed executor. The will contained in its seventh clause the following language: " I order and direct that my executor and his heirs maintain my son Warren Stebbins according to his rank and condition in life, provided the said Warren shall remain with said executor during said Warren's natural life, that is to say, in decent wearing apparel, board, doctoring, etc., but in case said Warren shall depart from said executor, then the said executor is not to be accountable for anything on his account. I constitute said executor a trustee for the above purpose under the above conditions."

The will of Titus Stebbins was admitted to probate April 18, 1844, and Caleb, the vendor, entered into possession under the will, and assumed the care and maintenance of Warren Stebbins, who continued to reside with him, and was provided for by Caleb down to the time of the transfers in December, 1881, and subsequently by ·Andrew, the purchaser, down to the date of his (Warren's) death, which occurred in July, 1883. At the time of the transfer in December, 1881, Warren was about seventy-six years of age, of feeble health and required extraordinary care and attention.

Andrew, the purchaser, agreed to assume the responsibilities and liabilities of Caleb under the will, and to support and maintain Warren during his life in consideration of the allowance of $1,000, which Caleb agreed to allow. Andrew executed a bond to Caleb assuming the liability and agreeing to perform the provisions of the will in that regard, and $1,000 was taken out of the purchase-price of the property. April 1, 1863, Andrew had sold to Caleb four cows, two heifers, one yoke of oxen and fifteen sheep valued at $331, for which Caleb was to pay in the fall of 1863, and a note was given therefor in 1870. That note was taken out of the purchase-price. The Special Term found that in allowing that indebtedness the interest from 1863 to 1870 was improperly included, amounting to $139, and to that extent allowed the plaintiff to recover, and directed judgment accordingly without costs to either party.

*H. L. Bronson*, for the appellant.

*R. H. Duell*, for the respondents.

HARDIN, P. J. :

Findings of fact have been made upon evidence warranting the conclusions stated, to the effect that the transfers and conveyances were made for the purpose of paying just debts due to Andrew Stebbins for services rendered and personal property sold, and for assuming the mortgage to Jewett and the debt to Chittendon, and the liability by reason of the provision in Titus Stebbins' will to support Warren Stebbins, and that the transfers were made without any fraud or fraudulent intent.

We are of the opinion that all the conclusions of fact in that regard were well supported by the evidence given upon the trial. The rule is that the determination of a question of fact will not be disturbed, on appeal, where there is no decided preponderance of evidence against the view adopted by the trial court. (*Hoffman* v. *De Graaf*, 23 Weekly Dig., 394.) It was lawful for the debtor to pay his debts by a transfer of his property. (*Stacey* v. *Deshaw*, 7 Hun, 449.)

A debtor has a right to prefer one or more of his creditors over the others, and so long as he exercises this right honestly and in good faith, his acts, whether the preference be created by sale or a pledge, are unimpeachable. (*Board of Chosen Freeholders of the County of Essex* v. *Lindsley*, 5 Eastern R., 117.) The fact that the transfers covered substantially all the property of the debtor was not conclusive evidence of a fraudulent intent. It was a circumstance, among others, to be weighed in determining the intents and purposes of the parties. (*Remington Paper Company* v. *O'Dougherty*, 36 Hun, 79 ; *Hale* v. *Stewart*, 7 id., 591.) The plaintiff assumed the burden of establishing fraudulent intent on the part of the purchaser of the property. (*Remington* v. *O'Dougherty, supra* ; *Woodworth* v. *Sweet*, 51 N. Y., 8 ; *Dudley* v. *Scranton*, 57 id., 424.)

To successfully attack the transfers it was incumbent upon the plaintiff to show a fraudulent intent on the part of Andrew Stebbins, the purchaser. (*Remington* v. *O'Dougherty, supra* ; *Parker* v. *Conner*, 93 N. Y., 118.)

Titus Stebbins, in 1844, made a will appointing his son, Caleb V. Stebbins, his executor, and in the will certain pecuniary legacies were given to parties named, and the executor was ordered and directed to maintain the testator's son, Warren Stebbins, in the

language embraced in the statement of facts, and following that language the will contained the following provision, viz.: "I give and bequeath unto my son, Caleb V. Stebbins, all the remainder of my real and personal property." Under the will Caleb took the farm owned by his father, at the time of his death, consisting of about 127 acres, and immediately took upon himself and assumed the care and maintenance of Warren down to December 21, 1881. Caleb supposed by taking the farm that he assumed the maintenance of Warren. We think the burden was accepted by Caleb and rested upon him at the time of the sale in 1881 to the defendant Andrew. (*Scott* v. *Stebbins,* 91 N. Y., 606; *Brown* v. *Knapp,* 79 id., 136; *McCorn* v. *McCorn,* 100 id., 511; *Bushnell* v. *Carpenter,* 28 Hun, 19.) When Caleb sold the farm he supposed, and as we think correctly (*Bushnell* v. *Carpenter,* 28 Hun, 19; S. C. affirmed, 92 N. Y., 270), that the burden rested upon the farm and upon him, and he took care to have that obligation assumed by Andrew, and allowed and paid $1,000 for such assumption of his liability by Andrew, and to secure the performance of the obligation took the bond of Andrew conditioned to discharge such liability and to indemnify him against it.

We think the sum was reasonable and that no fraud or fraudulent intent was evinced by the arrangement. Warren was advanced in years, irritable and untidy in his habits and required unusual care, support, maintenance and management. His expectancy of life was about four and one-half years by the Northampton tables. He lived some eighty-one weeks after the obligation given by Andrew and was properly cared for, such care requiring valuable services and considerable expenditures.

We are satisfied with the view the trial judge took of that branch of the case. *Morgan* v. *Potter* (17 Hun, 403) does not aid the appellant. There it appeared the transfer was voluntary, no valid consideration upheld it, and that there was a fraudulent intent. *Pond* v. *Comstock* (20 Hun, 492) was unlike this case. There the conveyance was made with a fraudulent intent on the part of the grantor. The same is true of *Union National Bank* v. *Warner* (12 Hun, 306). Here the vendor sold his property for an adequate consideration and in good faith. Though he had no other property, the sale is not for that reason to be held fraudulent. (*Hale* v.

*Stewart,* 7 Hun, 591; *Remington* v. *O'Dougherty, supra; Parker* v. *Conner, supra.*)

That a debtor may prefer a creditor has been repeatedly held, or may pay a *bona fide* creditor even when insolvent, and even if it require the sale or transfer of all his property to satisfy an honest debt or liability. (*Remington* v. *O'Dougherty, supra; Auburn Exchange Bank* v. *Fitch,* 48 Barb., 344.) The evidence given upon the trial presented a question of fact as to the note of $331. The facts appear from interested witnesses. Some of the evidence was vague and contradictory. We cannot say that the finding in regard to the note is not supported by sufficient evidence properly interpreted. The credence to be given to the witnesses speaking in regard to it was considered and passed upon, and according to settled authority we ought not to disturb the result. (*Michigan Carbon Works* v. *Schad,* 38 Hun, 71.)

Andrew Stebbins bought the property in good faith, in December, 1881, for a full and fair consideration with no knowledge of or participation in any fraud, and he acquired by such purchase a good title, and his rights and equities in it (except as allowed by the trial court), are superior to those of the plaintiff. (*Starin* v. *Kelly,* 88 N. Y., 418; *Zoeller* v. *Riley,* 100 id., 108.)

After weighing all the evidence and considering all the circumstances disclosed at the trial, we are of the opinion that the trial judge reached the proper conclusions of fact, and that those conclusions accord with the preponderance of the evidence, and that his decision upon the facts and law of the case should stand.

The judgment should be affirmed, with costs against appellant.

BOARDMAN and FOLLETT, JJ., concurred.

Judgment affirmed, with costs against appellant.