Swepson v. Davis.

SWEPSON, IN ERROR, *v.* DAVIS.

(*Knoxville.*   September Term, 1902.)

1. **MALICIOUS PROSECUTION.** Termination of former suit in favor of defendant therein essential to authorize action for.

In order to maintain an action for malicious prosecution it is necessary to aver and prove that the former or original suit, upon which the action is based, has been terminated by judgment or decree in favor of defendant therein; without this the action can not be sustained, even though there be a concurrence of malice and want of probable cause with respect to some of the material matters upon which the original suit was, in part, predicated. (*Post, pp.* 102, 107-117.)

Cases cited and approved: 1 Sneed, 228; Sloan *v.* McCracken, 7 Lea, 626; Gas Company *v.* Williamson, 9 Heisk., 314; Stewart *v.* Sonneborn, 98 U. S., 187; Crescent City Live Stock Co., &c., Co. *v.* Butchers' Union Slaughter, &c., Co., 120 U. S., 141; O'Brien *v.* Barry, 106 Mass., 300; Wood *v.* Laycock, 3 Metc. (Ky.), 193; Luby *v.* Bennett (Wis.), 56 L. R. A., 261.

Cases reviewed and distinguished: Pierce *v.* Thompson, 6 Pick., (Mass.), 193; Stone *v.* Crocker, 24 Pick. (Mass.), 81; Reed *v.* Taylor, 4 Taunt, 616; Masterson *v.* Brown, 72 Fed., 136; Brown *v.* McIntyre, 43 Barb., 344; Strong *v.* Grannis, 26 Barb., 122; Morton *v.* Young, 55 Me., 24.

2. **SAME.** Same. Case in judgment.

S., by bill in equity, brought suit against D. for a settlement of partnership accounts between them, and therein, among other things, he averred and charged that D. had misappropriated, diverted and fraudulently invested in real estate in his own name large sums of partnership funds, and had thereby overdrawn his account more than thirty thousand dollars; D. answered in detail the transactions complained of and denying all charges of mismanagement and misappropriation

Swepson v. Davis.

and insisting that such charges were calculated to injure and had injured him in his business and personal relations, and further, insisting that the partnership had not been terminated. The chancellor decreed that the dissolution of the partnership should be deemed to have been made as of the date the bill was filed, and that it was not necessary to decide whether it was being run under a contract of five or ten years at the time of the dissolution; that the charge that defendant had misappropriated large sums and invested them in real estate, concealing same from S. was untrue, and that defendant's dealings with the partnership funds was with the full knowledge and consent of complainant, thereby, in effect, absolving defendant from all charges of bad faith and misappropriation; the case was referred to the master to ascertain the state of accounts between the parties upon a basis stated, with the result that complainant, S., appealed. The court of chancery appeals found, among other things, that "the main contentions of complainant in his bill are not sustained by the proof" and that "this bill and its serious charges were without any rational foundation," and allowed defendant an additional credit of $1,575.00 and in other respects affirmed the chancellor's decree. On appeal to the supreme court, the opinion and decree of the court of chancery appeals were affirmed and the cause remanded to the chancery court for further accounting, which resulted in a judgment in favor of complainant, S., against D. for $2,150.60; whereupon D. brought this action against S. for malicious prosecution of said chancery cause.

HELD, That there having been final judgment in favor of S. in the chancery court proceedings this action can not be maintained by D., although some of the material averments of S.'s bill were false, malicious, and without probable cause. (*Post, pp.* 101-126.)

3.  **SAME.  Duty of trial judge.**

    On the trial of an action for malicious prosecution, it is the duty of the trial judge to construe the record of the former case, upon which the action is based, and determine for, and properly instruct the jury as to the successful party therein. (*Post, pp.* 102-103, 116-117.)

4.  **SAME.  Same.  Error to leave to jury.**

    Where an action for malicious prosecution is predicated upon

Swepson v. Davis.

a chancery suit in which the final judgment or decree was in favor of complainant therein, it was error in the trial judge to submit to the jury the question as to whether the complainant in said chancery suit was, in fact, the successful party, and for this purpose permit the jury to look to matters in the record of said suit, the decision of which was expressly pretermitted by the court. (*Post, pp.* 102, 116-117.)

5. SAME. Judgment in former suit, conclusive as to successful party therein.

In an action for malicious prosecution of a chancery suit, in which there was a final judgment or decree for complainant, the court can not look behind the judgment or decree, in order to determine which party, on the contentions made in the bill, was the successful party; the judgment of the court in the former suit is conclusive as to the successful party therein. (*Post, pp.* 116-117.)

FROM KNOX.

Appeal in error from Circuit Court of Knox County. JOSEPH W. SNEED, Judge.

TEMPLETON, CARLOCK & TEMPLETON, E. H. SPILMAN and PICKLE & TURNER, for Swepson.

ROGERS & ROGERS, J. C. J. WILLIAMS and D. L. SNODGRASS, for Davis.

MR. JUSTICE WILKES delivered the opinion of the Court.

This is a suit for the malicious prosecution of a civil action which was brought in the chancery court of Knox county in 1893, and finally decided April

21, 1900. There were pleas of not guilty and statute of limitations. There was a trial before a jury, and verdict and judgment for $16,500; and defendant appealed, and has assigned various errors, only one or two of which need be noticed, as they are conclusive of the case.

The eleventh assignment of error is that there is no evidence to support the verdict. Under this and other assignments, it is said that the record in the civil suit, which it is claimed was malicious and without probable cause, shows that the final judgment of the court was in favor of the complainant in that suit, and thus affords conclusive proof of probable cause for bringing the suit.

In connection with this assignment may be considered the objections to the action of the court in refusing to give special requests, in substance, that before the plaintiff could maintain his suit for malicious prosecution the former suit upon which it is based must have finally terminated in favor of the plaintiff in the present suit, and that, if the final judgment in the original suit was against the plaintiff in this suit, he could not recover in this action, and this would be true though the complainant in the original suit was not successful in establishing all his allegations and contentions.

The contention is also made that the court should have examined the record in the original suit, and told the jury whether it was decided for the plaintiff

in the present suit or not, and it was error to leave it to the jury to decide whether plaintiff was or not successful as they might determine upon a question which was not passed upon in the original suit.

Plaintiff and defendant had been partners in Knoxville for many years, and had built up a large business; Swepson furnishing almost all the capital, and Davis attending to the business, and receiving a salary therefor, besides a share in the business. The bill in the original suit was brought to wind up the partnership, and it was alleged that the stock was sold out on October 1, 1891, and the firm went into liquidation at that time.

The allegations of the bill of which complaint is specially made are, in substance, that Davis had drawn out of the firm large sums of money, and invested the same in real estate, until the balance to the debit of his personal account was more than $16,000, and that this debit against him was one of the largest assets of the firm; that he had invested $13,500 or more of the firm's money in real estate at or near Johnson City, and had taken the title in his own name; that he afterwards sold the land to an incorporated company, which he organized for that purpose; that he took of the firm's money $12,512.50, and put it into a tract of land near Lake Ottosee, taking the deed to himself and the complainant jointly; that he withheld the deed to the same from registration for more than three months in order to conceal

the transaction from complainant; that complainant, because of defendant's insolvency, chose to ratify the purchase; that Davis took also $4,375 of the firm's money and invested it in a lot in Knoxville, and took deed to himself individually; that defendant's account was overdrawn more than $30,000, instead of $16,000, as admitted by him, and that outside of defendant's indebtedness, and the lands and lot mentioned, there were only a lot of suspended notes and accounts, of which defendant admitted that only about $12,000 were collectible, and that defendant had no property, except a home in Knoxville, worth about $3,000; that he had become insolvent, and was in no business, but was planning a trip to New York or Baltimore to engage in business, and in the meantime was collecting the remaining debts due the firm, and not accounting to complainant for the same. There was a prayer for an account, and decree for whatever might be found due on settlement, for the appointment of a receiver, and for a realizing on all the assets of the firm, real and personal, and for general relief.

The defendant answered the bill, going into great detail in regard to the business of the partnership; explaining the various transactions complained of; denying all charges of mismanagement and misappropriation on his part, and all allegations that tended to injure his personal or business standing; and insisting that the firm was not dissolved,

but that the charges made against him were calculated to injure him personally and in his business relations. The chancellor heard the case, and decreed that the dissolution of the partnership should be deemed to have been made as of the date the bill was filed, and that it was not necessary to decide whether it was being run under a contract of five or ten years at the time of the dissolution; that the allegations that defendant had drawn out large sums of money and invested them in real estate, concealing the same from complainant, were untrue, but that the partnership funds were used with the full knowledge and consent of the plaintiff; that the lands were partnership assets; that the defendant only used $1,000 of the firm's assets in the purchase of the lot in Knoxville for $4,375, and the remainder was paid for by defendant out of his individual means; that defendant was entitled to the $4,000 of cash notes, but was not entitled to a credit upon his account of $1,575 for salary, as claimed. The case was referred to the master to ascertain the state of accounts between the parties upon a basis laid down, and Swepson thereupon appealed to the supreme court.

The cause was heard before the court of chancery appeals, and the decree of the chancellor was affirmed, except that Davis was allowed on his assignment an additional credit on salary account of $1,575, which the chancellor had

disallowed, and all costs were adjudged against Swepson. 37 S. W., 896.

. The opinion of that court was made part of the record, and Swepson appealed to the supreme court. This court orally affirmed the decree of the court of chancery appeals, and adopted the decree of that court as its own, and ordered that the decree of the court of chancery appeals, which had made the opinion of that court a part of the record, should be certified to the chancery court, along with the decree of the supreme court, on the remand of the cause. After the remand the cause proceeded to an account and final judgment on 21st April, 1900, for $2,150.66 against Davis, the defendant, and in favor of Swepson, the complainant, in that cause.

The court of chancery appeals in its opinion says, among other things: "It is sufficient to say that, in our opinion, the main contentions of the complainant in his bill are not sustained by the proof." And again: "We are satisfied that Davis, in all his negotiations and conduct, believed that what is called the 'ten-year contract' was in force; but, looking at the relation of these parties, and what was actually done, we agree with the chancellor that it is of no practical importance, in so far as the equitable rights of these parties are concerned, to determine whether or not said contract was in existence, and actually regarded as an existing contract, defining the rights and duties of the parties, at and before the filing of the bill. In

Swepson v. Davis.

view of the filing of the bill, and its charges, no court of equity would continue partnership relations between them." And again: "An examination of this whole record, and all the evidence contained in it, and especially the record evidence furnished by complainant Swepson, himself, leads us irresistibly to the conclusion that this bill and its serious charges were without any rational foundation."

Now, conceding we may look to the opinion of the court of chancery appeals in the original suit, and conceding all that is said by that court in regard to the necessity for the original suit, and conceding, as claimed by counsel for Davis, that many charges and allegations in the bill were unauthorized and unwarranted, and calculated to do Mr. Davis great injustice, and that they did actually so result, the fact appears nevertheless that upon the final decree in the original suit it was in favor of Swepson and against Davis for $2,150.66. The question arises, can a suit for malicious prosecution be sustained upon such record, and in view of the final decree in the original suit? In order to maintain a suit for malicious prosecution, it is necessary to allege and prove that the former or original suit on which it is based has terminated, and that it resulted in favor of the defendant in that suit. *Pharis* v. *Lambert,* 1 Sneed, 228; *Sloan* v. *McCracken,* 7 Lea, 626; *Gas Co.* v. *Williamson,* 9 Heisk., 314; *Stewart* v. *Sonneborn,* 98 U. S., 187 (25 L. Ed., 116) ; *Crescent City Live Stock, etc., Co.* v. *Butchers'*

*Union Slaughter House, etc., Co.,* 120 U. S., 141 (7
Sup. Ct., 472; 30 L. Ed., 614). The authorities, Eng-
lish and American, sustaining this proposition, are
collated in 19 Am. & Eng. Enc. Law (2d Ed.), p. 683;
13 Enc. Pl. & Prac., 446.

Jaggard, in his work on Torts, says: "To
maintain an action for malicious prosecution,
the plaintiff must show that the original pro-
ceeding terminated in his favor, if from its na-
ture it was capable of such termination, and such
termination must have been final, so that it can not
be renewed. . . . If the original proceeding was
not terminated in plaintiff's favor, all questions as
to malice, want of probable cause, and the like, are
immaterial." 1 Jagg. Torts, section 198, p. 610, cit-
ing a large number of English and American cases.

Mr. Cooley, in his work on Torts, in defining the
elements necessary to sustain an action of malicious
prosecution, says (section 181): "There must be a
concurrence of the following circumstances: (1) A
suit or proceeding instituted without any probable
cause therefor; (2) the motives in instituting it must
be malicious; (3) the prosecution must be terminated
in the acquittal or discharge of the accused." Again,
(section 186): "The termination of the proceeding
must, in general, be a final acquittal."

In 1 Hil. Torts, p. 451, it is said: "An action
for malicious prosecution of a civil suit will not lie
until the final termination of the suit, and the com-

Swepson v. Davis.

plainant must allege a want of probable cause, by averring that the suit was finally determined in favor of the defendant therein."

To the same effect and substance is Webb, Pol. Torts, pp. 394, 395, note 3; Addison on Torts, p. 450, section 26.

In *Sloan* v. *McCracken,* 7 Lea, 627, it is said: "This action is brought to recover damages for the wrongful suing out of the attachment in the original cause. Such an action is the common-law action for the malicious prosecution of a civil suit, and is founded upon malice and probable cause. *Smith* v. *Eakin,* 2 Sneed, 457, 462. The plaintiff must show that the suit complained of is ended, and ended by a decision in his favor. *Gas Co.* v. *Williamson,* 9 Heisk., 314; *Pharis* v. *Lambert,* 1 Sneed, 228. For, if the decision were in favor of the plaintiff, the judgment would be conclusive that there was probable cause, unless shown to have been procured by fraud. The plaintiff below in the present suit had failed to show a decision in his favor in any respect in the attachment suit, and his action necessarily fails." In this case there was judgment also upon the merits in favor of the plaintiff. In the cases of *Sloan* v. *McCracken,* 7 Lea, 627, and *Gas Co.* v. *Williamson,* 9 Heisk., 314, it was held, in substance, that the judgment of an inferior tribunal in favor of the original plaintiff is *prima facie* evidence of probable cause, even though the decision of the court of final resort should reverse

the judgment of the court below, and be in favor of the defendant in the original suit.

We have been cited to quite a number of cases by counsel for the plaintiff, but, so far as we have been able to examine them, they are not in conflict with the rule laid down.

In the case of *O'Brien* v. *Barry,* 106 Mass., 300 (8 Am. Rep., 329), cited by plaintiff in this suit, it is said: "In an action for malicious prosecution, the plaintiff must show that the prosecution or suit complained of has been terminated by a judgment in his favor."

It was held that such suit was premature when brought before the termination of the replevin suit on which it was based, although it was apparent that damage had been done already by seizure of the property in the replevin suit. We have also been specially referred to the case of *Wood* v. *Laycock,* 3 Metc. (Ky.), 193, but in that case it is said: "It is a well-established principle that a plaintiff can not maintain an action for malicious prosecution of a civil suit until after the legal termination in his favor of the suit complained of, and such termination must appear on the face of the declaration or petition," citing *Spring* v. *Besore,* 12 B. Mon., 553; *Cole* v. *Hanks,* 3 T. B. Mon., 209; 1 Hil. Torts, 495. It is said in that case that an exception exists in cases where there is a statutory provision which declares an interlocutory decree final, but, adds the

court, "Except in cases of the class mentioned, we are aware of none in which the important prerequisite of the legal termination of the suit complained of can be dispensed with."

In the progress of the case there was an order discharging an injunction because improperly sued out, and the court held that the suit for malicious prosecution of the injunction could not be maintained until the former suit was determined on the merits.

While the court in that case emphasizes the necessity that the original suit should be terminated, it also emphatically lays down the prerequisite that it must be terminated in favor of the plaintiff in the second suit.

The case of *Luby* v. *Bennett* (Wis.), 87 N. W., 804 (56 L. R. A., 261), is relied on. In that case the rule is laid down as follows: "A right of action for damages for malicious prosecution does not accrue till the wrongful proceeding has been brought to final determination in favor of the defendant or person accused," citing a large number of authorities. It was said: "In an action to recover compensation for such a wrong, such final determination must be alleged distinctly in the complaint, and proved on the trial, the same as any other fact essential to the cause of action, or the pleading will be open to successful challenge for insufficiency. Appellant now invokes this rule, but, as we read the complaint, it seems that it is very clearly alleged

that the wrongful prosecution was ended by a judgment in favor of the defendant therein before this action was commenced.

"The meaning of the language of the pleading, 'It was finally decided and adjudged in said action on the 25th of September, 1900, that said action was without foundation and was maliciously and unjustly begun, and that this plaintiff was and had not been guilty of any wrong, and awarded this plaintiff judgment therein against the plaintiff therein,' leaves no room for reasonable controversy but that the alleged wrongful prosecution was closed by a judgment in favor of respondent prior to the commencement of this suit."

The case was being heard upon demurrer, and the effect of the holding was that the termination of the suit favorably to the defendant therein had been sufficiently alleged in the complaint, and the demurrer was not, therefore, good. It was held that the pendency of a receivership in the case would not prevent the judgment being final, if the issues material to the question of the *bona fides* should be tried and closed by final judgment. While the case is not definitely stated, we infer that a final judgment had been rendered for the plaintiff on the merits, and that the result of the receivership would only determine the amount of his recovery.

It is said, however, that the original defendant need not show that he was successful in all his contentions,

or even in the final result, if he can show that he was successful, and the original plaintiff failed, in respect to material allegations and charges made in his complaint, and especially if these charges are unwarranted, false and malicious.

To sustain this proposition, we are cited to 2 Greenl. Ev. (Redf. Ed.), section 449, p. 400, as follows: "It is not necessary that the whole proceeding in which the plaintiff was prosecuted by the defendant be entirely groundless. If groundless charges are maliciously and without probable cause coupled with others which are well founded, they are not on that account the less injurious, and therefore constitute a valid cause of action." Mr. Greenleaf, in support of this proposition, cites *Pierce* v. *Thompson,* 6 Pick., 193; *Stone* v. *Crocker,* 24 Pick., 81; *Reed* v. *Taylor,* 4 Taunt., 616; *Buckley* v. *Wood,* 4 Coke, 14. We have not been furnished with the English cases cited, and have not access to them, but the Massachusetts cases do not sustain the text of Mr. Greenleaf. The case of *Pierce* v. *Thompson,* 6 Pick., 193, is simply to the effect that an agreement to arbitrate is not conclusive of probable cause. In the other cases the original suit was a criminal prosecution in which the defendant had been acquitted. In the case of *Pierce* v. *Thompson,* supra, there were two original suits said to be malicious; one being that of Thompson, as administrator, and the other of Thompson individually, as a

partner. On the reference, Thompson obtained an award on one of the cases, but failed on the other, the award being in general terms. On the subsequent suit for malicious prosecution, Pierce was allowed to separate the two suits, and to show that the award, which was general, was in fact applicable to only one case, and did not apply to the other. His action for malicious prosecution was then sustained as to the case in which the plaintiff had failed, but not as to the other, in which he was successful. In *Masterson* v. *Brown*, 18 C. C. A., 481 (72 Fed., 136), it is held that, if libelous matter is falsely and maliciously incorporated in a suit which is successfully prosecuted, the remedy of the defendant therein is for libel, which he may bring after the termination of the former suit. In this case, which arose in Texas, the actions for malicious prosecution and libel were joined. It was held that the action for malicious prosecution could not be maintained, because the original suit had not been disposed of in favor of the defendant. Pages 482, 484, 485; 18 C. C. A., pages 137, 139, 140, 72 Fed. And it was said the same rule would apply to the suit for libel, founded on allegations made in the course of the judicial proceedings; thus recognizing that the action for malicious prosecution would lie only when judgment had been secured by defendant, but for libel would lie for charges made in the course of the proceeding. In *Mitchell* v. *Jenkins*, 5 Barn. & Adol., 588, 594, cited in 2 Greenl. Ev. (16th Ed.),

427, 428, note 4, it is said by the judge: "I can conceive a case where there are mutual accounts between parties, and when an arrest for the whole sum claimed by the plaintiff would not be malicious. For example, the plaintiff might know that the set-off was open to dispute. In that case, though it might afterwards appear that the set-off did exist, the arrest would not be malicious. The term 'malice' is not to be considered in the sense of spite or hatred against an individual. . . . That would not be the case when, there being an unsettled account, with items on both sides, one of the parties believing *bona fide* that a certain sum was due to him, arrested his debtor for that sum, though it afterwards appeared that a less sum was due." It is proper to remark that in the present case the declaration simply alleges the former suit and a termination of that suit in favor of the plaintiff, and that the prosecution was malicious and without probable cause. There is no allegation that, notwithstanding the final judgment was against plaintiff, still he had been successful in refuting false and malicious allegations made in the bill for the purpose of securing a greater judgment against him. The plaintiff does not, therefore, present a case where he is suing for malicious charges made and proved untrue, although the final judgment was against him, but he brings the technical action of malicious prosecution, which only lies after final judgment against the plaintiff in the original

suit. We know of no authority, and have been cited to none, holding that it is necessary for the plaintiff in his original suit to sustain every allegation or charge made in his bill, or else be liable to a suit for malicious prosecution. If this be the correct doctrine, then in every suit for malicious prosecution there must be a separate investigation and retrial of each separate allegation made in the original suit, without reference to the result of the suit as a whole, and the final decree therein. The only sound and tenable rule in cases of malicious prosecution is that adopted by all the courts, and that is to settle the question whether the original suit was successfully prosecuted or not by the decree therein upon the final adjudication, and not by the separate allegations and charges, and the proof for and against each.

Nor can the court upon the trial of the cause for malicious prosecution look to matters which were not passed on in the original suit, and decide what effect such extraneous matters might have had in the decision of the original suit, if considered. To allow this will permit a review of the original suit upon issues not involved in it, and a retrial of that suit upon different grounds from those upon which it was originally decided. Hence it was error for the court to submit to the jury the question whether Davis was successful in the original cause, upon the assumption that he had a ten-year, instead of a five-year, contract of partnership. The court said to the

jury that "this question was expressly ignored in said original suit, and is a question of fact to be found and determined by you in this case," and told the jury that, if they found this issue in favor of Davis, then Swepson must in the original suit have proved such breaches of trust, misappropriations and other conduct as would be sufficient to set aside the ten-year contract. This was in effect saying that whether Davis gained or lost the original suit depended not upon the decree in that suit, upon the issues considered and determined in that suit, but whether Davis was entitled to the benefit of a ten-year contract—a question which had not been determined in the original suit, but had been expressly pretermitted and not passed upon. If the original suit ought to have been determined on that question, as it was not so determined, there has been no adjudication whatever, and no final judgment in Davis' favor. It was in effect holding that the former suit had never been decided upon the real question involved, but that this undecided question must govern the jury in determining whether Davis won or lost the suit, and whether that suit had been properly brought, with probable cause. The declaration set up the former suit, and is based upon it, and Davis must stand or fall by the result of that suit; and the result of that suit is triable by the record as made, not by matters which were not embraced in it, but expressly reserved and excluded from it. *Brewer*

v. *Jacobs* (C. C.), 22 Fed., 217; 14 Am. & Eng. Enc. Law (1st Ed.), p. 59, note 2.

The result is that the court below was in error in holding that the suit for malicious prosecution could be based upon an original suit which had been terminated by a judgment final in favor of the plaintiff in that suit. The court was also in error in submitting to the jury the question whether the plaintiff in this suit was successful in the original suit, and especially in telling the jury that it could look to matters not passed upon in that suit, but expressly pretermitted by the decrees in that case. Whether the plaintiff could have maintained an action for libel upon the separate charges made in the bill which were not sustained by proof, as was held in the case of *Masterson* v. *Brown,* 18 C. C. A., 481 (72 Fed., 136), we do not decide, as that question is not involved in this case, by the character of the action brought, nor by the declaration in the case.

For the errors indicated, which are vital, the judgment of the court below must be reversed, and the cause remanded for a new trial, and appellee will pay costs of appeal.

### ON REHEARING.

MR. JUSTICE WILKES delivered the further opinion of the court.

In this cause a very earnest petition to rehear has been filed. It is insisted that, even if it be conceded

that, the original suit must have terminated and been decided in favor of the defendant in that suit, before the action of malicious prosecution could be maintained, still the real position of counsel for Davis is that the record of the original case, taken as a whole, does show a termination of the suit in his favor—in other words, that the court should look behind the final judgment in the original suit, and ascertain whether, upon the contentions made by the bill as a whole, Davis was successful.

It is said that the court did not cite and comment upon 2 Rice, Ev., p. 1062. This was not done because the extract from Rice is a literal copy, in both text and citations, of the extract from 2 Greenl. Ev., p. 249. There is nothing in Rice but what is taken literally and verbatim from Greenleaf, and the latter was commented on at length. The fact that Rice, in his compilation of authorities and cases, has copied from Greenleaf, adds nothing to the value or weight of the authority. Nor does the fact that the text and notes in Greenleaf have remained the same throughout sixteen editions add force to it, or prove its correctness, if not supported by the authorities cited or by other authorities. We are again cited to several cases to which our attention was called on the original hearing, and which we could not examine because the books were not accessible. The case of *Brown* v. *McIntyre,* 43 Barb., 344, is cited and again relied on, though not furnished. That case refers also to the

case of *Strong* v. *Grannis,* 26 Barb., 122, but we have not access to the last-named case. It is well to remark that these cases are not from courts of last resort.

The case of *Brown* v. *McIntyre,* 43 Barb., 344, is digested in 33 Am. Dig. (Cent. Ed.), p. 1796 (h), as follows: "A creditor, having brought suit in Canada against his debtor for a legal claim, had him arrested on a capias issued on an affidavit made by himself, which by the laws of Canada could not be controverted, and in which he fixed the amount of the claim at a sum greater than the actual indebtedness, so that the debtor was unable to secure bail, which he might have procured if the creditor had stated correctly the amount of the debt. Held, that the debtor could maintain an action for malicious prosecution."

It appears this case was based upon the idea of an abuse of the process of the court in arresting the defendant for an amount for which he could not give bail; and, if so, it would be no authority in this case; nor would it be out of line with the general trend of authority giving a right of action for the malicious abuse of process or false imprisonment, as hereafter stated more fully.

The case of *Morton* v. *Young,* 55 Me., 24, is also again called to the attention of the court. It was not commented on in the original opinion, though examined, because it was not believed to bear upon the question now at issue. The case we

find reported in 92 Am. Dec., 565. There appears to have been no issue in the case as to how the original suit was decided. The suit was for debt, accompanied by an arrest of defendant. In order to release himself from custody, and acting under duress, the defendant paid part of the demand; and the jury found that it was paid under protest and duress, and with a denial of the justice of the claim. It was insisted the payment was conclusive proof of probable cause for the former suit. The court held not, unless it had been voluntarily made, and the payment did not estop the complaining party from showing the groundlessness and malice of the proceeding.

We are furnished with a copy of *Buckley v. Wood,* 4 Coke, 14, referred to by Mr. Greenleaf. Counsel says this case is a little misty, and has to be read carefully to be understood, but when understood it means that when a bill was filed, making certain charges, of which a court of equity had cognizance, but which were privileged, and other charges were incorporated of which it did not have cognizance, an action would lie as to the latter, though not as to the former. But it was held in that case that the action was not founded upon the allegations of the bill, but upon the fact that defendant had stated, in the county of Salop, in the hearing of many persons, that the bill was true, but did not say what the allegations of the bill were, so that persons hearing the statement that the bill was true never-

theless did not know that the clauses in the bill were slanderous, and for that cause the judgment holding the defendant liable was reversed.

It does not clearly appear what the action brought in this case was. It is stated it was an action on the case, and, from the very nature of the case, must have been an action for slander.

The case of *Stone* v. *Crocker*, 24 Pick., 81, is cited, but we do not comment upon it, as we can not see that it in any way sustains counsel for Davis.

The case of *Reed* v. *Taylor*, 4 Taunt., 616, is said to be in point. It was a suit for the malicious prosecution of a criminal indictment containing twelve charges of perjury, made in regard to eight several payments and transactions. It was shown that the defendant so indicted was acquitted of all charges. The evidence tended to show that parts of the affidavit as to three of the transactions were untrue and made without probable cause. As to the other transactions, it was shown the charges were true, and there was no probable cause for the assignments of perjury as to these transactions.

It was said by Mansfield, C. J., that if a man prefer an indictment containing several charges, some of which are grounded on probable cause, and others not, this would support a count for preferring an indictment without probable cause; and Gibbs, J., concurred

with him. The case is cited with approval in 4 Phil. Ev. (2d Ed.), p. 257.

The case, as we read it, explains the text of Mr. Greenleaf in a manner which puts an application to it entirely different from that insisted on by counsel for Mr. Davis, and simply holds that where a malicious suit is brought, based on several charges or allegations, and it is decided for the defendant, such defendant may, in a subsequent prosecution, show that a portion of the charges and allegations are false, malicious and made without probable cause, although other charges may be good and based upon probable cause. But it does not hold that the same result would follow if the judgment in the original suit was adverse to the defendant therein. In other words, the plaintiff in the suit for malicious prosecution, when he has judgment in his favor in the original suit, may show that any one or more of the charges made was malicious and without probable cause. In other words, to apply the principle to the present case, if Davis had been successful in the original case, and obtained a judgment in his favor therein, he could sustain his action in this case if he could show that any one of the charges made in the original suit was false and made maliciously and without probable cause, and it would not be required of him to show each and every charge to be false, malicious and without probable cause. As thus ex-

plained and applied, the text of Greenleaf is not in conflict with other holdings of the courts, when he says: "It is not necessary that the whole proceeding be utterly groundless, for, if groundless charges are maliciously and without probable cause coupled with others which are well founded, théy are not on that account the less injurious, and therefore constitute a valid cause of action."

The difference between that case and the present one is vital, in that there was an acquittal of the defendant of all charges in that case, while here there was judgment against Davis.

If in the present case Swepson had failed to recover judgment against Davis, and the latter had then sued for malicious prosecution, he might show that any one of the charges was false, malicious and without probable cause, even though others may have been sustained, or be shown to be based on probable cause. We can not see that this case is in point in the present suit. The case of *Mowry* v. *Miller*, 3 Leigh, 561 (24 Am. Dec., 680), is referred to; but the gist of this decision is simply that the party bringing the suit for malicious prosecution for a crime must show an acquittal before action brought, but that the precise date is not material. 4 Phil. Ev. (2d Ed.), p. 261, is cited, where it is said: "Where there have been mutual dealings between the plaintiff and defendant, and items are ascertainable to be due on each side

Swepson v. Davis.

of the account, an arrest in the amount of one side of the account, without deducting what is due on the other, is malicious and without probable cause.

And in answer to an action for maliciously arresting the plaintiff without having a cause of action to a bailable amount, it is not sufficient to show that the defendant has a cause of action to the requisite amount, if it be a different cause from that mentioned in the affidavit to hold to bail." Authorities are cited to these two propositions.

The text continues, however, as follows: "Though in an action in that particular form it will be sufficient for the defendant to prove a debt to a bailable amount, notwithstanding it is much less than the sum for which the plaintiff was arrested. It is not sufficient proof of want of probable cause for holding plaintiff to bail for a particular sum to show that a less sum was paid into court, and taken out by the defendant, who in consequence relinquished his action against the plaintiff." It is apparent that the author, in his text, is speaking of an action for malicious arrest or false imprisonment, as contradistinguished from an action for malicious prosecution—a distinction which the learned author comments on in several pages of the volume, and which is recognized in all the authorities and cases in which the two actions are considered.

Several references are made to Newell on Malicious Prosecution, which we have carefully examined and

considered. Section 33, p. 52, relates to an action for maliciously suing out an attachment—a case clearly distinguishable from the present. So section 4, subd. 2, pages 328, 329, and notes, relates to malicious arrests or false imprisonments, also different from the case at bar.

The difference, as we have already said, is pointed out in Phillips on Evidence. It is also commented on in Newell on Malicious Prosecution, section 22, p. 360; also section 4, p. 454; also section 20, p. 359.

The difference material to be observed in the present case is that in an action for malicious prosecution it must be alleged and shown that the original suit has been determined and by a judgment in favor of the defendant in that suit (Newell, Mal. Pros., p. 331, section 6), while in actions for a malicious abuse of process or for false imprisonment it is wholly unnecessary to allege or prove that the prosecution has been determined, or how, as the action depends wholly upon the illegality of the detention and abuse of process. And so in case of a wrongful and malicious attachment the action depends upon the wrongful and malicious seizure of property, without regard to the result of the litigation on the merits. *Sloan* v. *McCracken,* 7 Lea, 626; *Smith* v. *Eakin,* 2 Sneed, 457.

We have given the case the most mature consideration and the closest investigation, not being con-

Swepson v. Davis.

tent to rest upon the authorities furnished us, but seeking all others that would tend to aid us, and we are not able to see any error in our original holding, and the petition to rehear is dismissed.