UNITED STATES *v.* F. W. WOOLWORTH CO. (No. 4113)[1]

[1] T. D. 49576.

34

United States Court of Customs and Patent Appeals, April 25, 1938

*Joseph R. Jackson,* Assistant Attorney General (*Daniel I. Auster,* special attorney, of counsel), for the United States.
*Sharretts & Hillis* (*Edward P. Sharretts* of counsel) for appellee.

[Oral argument February 11, 1938, by Mr. Auster and Mr. Edward P. Sharretts]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:[2]

This is an appeal from a judgment of the United States Customs Court, Second Division, in reappraisements 98867–A, 99293–A, 99482–A, and 99543–A.

The merchandise involved consists of decorated earthenware, porcelainware, and chinaware, produced in Japan and imported into the United States during the early part of 1931.

The entered values of the merchandise were advanced by the appraiser at the port of Boston, Mass., and the importer filed appeals for reappraisement. When the case, the appeals having been consolidated, came on for trial, the importer moved for a judgment upon the invoices and entry papers, claiming that the appraisements were "meaningless and invalid." No evidence was introduced by either party. Although the trial court and the appellate division of the Customs Court concurred in the view that the appraisements were illegal and void, and that the merchandise was dutiable in accordance with the entered values, the appellate division was of opinion that the appeals for reappraisement should have been dismissed by the trial court. However, instead of reversing the judgment and remanding the cause to the trial court with instruction to dismiss the appeals, the appellate division reversed the judgment and dismissed the appeals.

On appeal to this court, *United States* v. *F. W. Woolworth Co. et al.,* 22 C. C. P. A. (Customs) 184, T. D. 47126, the judgment of the appellate division of the Customs Court was reversed and the cause.

---

[2] JACKSON, Judge, took no part in the consideration or decision of this case.

remanded for further proceedings. In disposing of the issues there presented, we said, *inter alia:*

It should be borne in mind that the entire controversy relative to the validity of the appraisement revolves about the matter of the costs of packing charges, etc., there being none concerning the *per se* value of the merchandise.

The actions of the local appraiser respecting appraisement are set forth in notations made in red ink upon the respective invoices. These are described in the opinion of the lower court as follows:

Reappraisement 98867–A (red ink): "Appraised at invoiced value plus 41 sen per cubic ft. case & packing & mic. charges incld. in appraised value." Initialed J. F. C. The same initial appears on the summary of entered value, examination and appraisement sheet.

Reappraisement 99293–A (red ink). "23 cases 39378–400. Appraised at invoice prices plus 47 sen per cubic ft. for packing & Misc. charges."

Reappraisement 99482–A (red ink). "Appraised at invoice prices plus 41 sen per cubic ft. for case, pack. & misc. charges."

Reappraisement 99543–A (red ink). "11 cases. Appraised at invoice values plus 46 sen per cubic foot for case, packing, and misc. charges plus 20 sen per case for iron hoops, plus local freight. 2 cases appraised at invoice value plus 41 sen per cubic foot for case, packing and misc. charges plus 20 sen per case for iron hoops."

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

We do not deem that it is proper for us here to go further than to hold (1) that it does not appear from the record in this case that the local appraiser *appraised* the value of the packing charges and miscellaneous charges; (2) that the appraisers of merchandise and reappraisement tribunals have authority to determine the actual amount of such charges, irrespective of the amounts stated on the invoices; (3) that it was the duty of the trial court and the appellate division of the Customs Court to determine the amount of such charges if the record is sufficient for that purpose; and (4) that the appellate division erred in holding that the appeals to reappraisement should be dismissed for lack of jurisdiction.

Subsequent to the rendition of this court's judgment in that case, the appellate division remanded the cause to the trial court for a new trial. A new trial was had, at which time counsel for the importer introduced in evidence, over the objection of counsel for the Government, certain testimony of Thomas A. Sullivan, "clerk to the examiner that passed on this merchandise." (It appears from a statement made to the trial court by counsel for the Government that the examiner referred to in the testimony of the witness had retired from the "Service," and was not available as a witness.)

The witness Sullivan testified that, as clerk to the examiner, it was his duty to "classify invoices, keep records of values," and to do "general office work"; that when there was to be a change of classification of imported merchandise, it was his duty to "write that change in when the examiner" told him what it was "going to be"; and that he had nothing to do with the "appraisement" of the involved merchandise. When asked what he did relative to the "figures for the appraisement," he said:

There had been a consular investigation going on for some time during 1930 and 1931 on the packing charges of Japanese porcelains and china. They turned around and made two items out of it, a case and packing charge generally of 25

sen and miscellaneous charges that usually ran about 25 sen. On the investigation they found out that certain of these miscellaneous charges were really not nondutiable charges, such as coolie hire, stuff of that kind, which are charges which entered into the transaction before the goods were put into packed condition ready for shipment.

We quote further from the testimony of the witness:

Q. That red ink writing on there is your writing is it?—A. Yes, sir.

\* \* \* \* \* \* \*

Q. Will you read it?—A. "Appraised at invoiced value plus 41 sen per cubic foot. Case and packing and miscellaneous charges included in appraised value."

Q. Now, how did you figure out that 41 sen that you have?—A. We take the transportation, this here, the transportation is 3.20.

Q. On this invoice it is 3.20.—A. You understand that all of these charges here added are the cost of miscellaneous charges on 80 cubic feet of packing.

Q. Now, let us take the first item. The first item is casing and packing.—A. 28 sen a cubic foot.

Q. 28 sen a cubic foot, carried out to 22.40. Did you accept that as correct?— A. We accepted all charges as correct. Let me explain this to the Court: We did not doubt the per se value of the merchandise; neither did we doubt the packing charges, but we tried to express on this invoice here the fact that they took out too much of the charges for nondutiable charges. We tried to separate the proportion of nondutiable charges so that the Government would get what belonged to it and everything would be straightened out.

Presiding Judge McClelland. Were the charges expressed on the invoice?

The Witness. Oh, yes.

Presiding Judge McClelland. Now, will you just read them into the record as they were expressed on the invoice?

The Witness. Case and packing, 28 sen a cubic foot; transportation, 3.20— this was based on 80 cubic feet; shipping 4.80; handling, 2.40; fire insurance, 1.60; storage, 3.20; and other petty charges, 2.40.

Presiding Judge McClelland. Now, you changed those charges in what respect?

The Witness. Only in this respect: That as a general rule the importers allowed 50 sen per cubic foot for case and packing and miscellaneous charges. They allowed 25 sen as the dutiable portion and they took 25 sen as the nondutiable portion, while during the investigation abroad they found out that instead of 25 sen being the nondutiable portion they only could allow 9 sen as nondutiable, so we simply took the 9 sen out of the charges and added back the rest.

By Mr. Sharretts:

Q. That is, as I understand it, you figured that the charges that were nondutiable were at too high a figure?—A. That is the idea.

Q. Figuring that those charges which you accepted as nondutiable were at too high a figure you took something off that nondutiable charge and put it on the dutiable charge?—A. Yes; because the importers——

Presiding Judge McClelland. Never mind the because.

The Witness. That is just what we did. There should be allowed on all of these charges 9 sen a cubic foot to be taken——

Presiding Judge McClelland. That was based on what?

The Witness. Consular reports.

We deem it unnecessary to quote further from the testimony of the witness. It clearly appears from his testimony that, as he understood it, some of the charges and expenses or portions thereof, although

invoiced and entered as nondutiable, were, in fact, a part of the costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, and, as such, *were regarded* by the *examiner* as dutiable; that the *examiner* obtained his information relative to the costs, etc., of packing merchandise other than that here involved, but of the same kind, for shipment to the United States from reports of Government agents in Japan; and that the *examiner* regarded 9 sen per cubic foot as sufficient to cover the nondutiable charges on shipments from the Nagoya district in Japan, and 8 sen per cubic foot as sufficient to cover such charges on shipments from the Yokkaichi district.

The witness A. Q. Smith, assistant secretary in charge of the foreign department of the importer-appellee, stated that he and his department had supervision over all importations and exportations for his company; that he had charge of "the making of the remittance" for the involved merchandise; and that payments for such merchandise were in "exact accordance" with the invoices. In explanation of the latter statement, the witness said that "these firms [referring to the foreign shippers] drew drafts on us on the Sumitomo Bank of Osaki, Japan, and the sight drafts were honored upon presentation at the bank"; that he had examined the drafts before testifying, and that the amounts specified thereon corresponded with the amounts stated on the involved invoices.

The importer's witness Sullivan was also called as a witness by the Government. He identified certain Government agent's reports, which were introduced in evidence as Exhibits 1, 2, 4, 5, 6, 7, 8, 10, and 11. The witness then testified as follows:

Q. Did they [the reports] have any bearing on your action in making the calculations which are in your handwriting on these four cases?—A. I wouldn't say all of them did; no.

Presiding Judge McCLELLAND. Who was determining what should be done here, you or the examiner?

The WITNESS. We both talked it over, and I did what he told me.

Presiding Judge McCLELLAND. You did what he told you, so that the judgment was formed by him as to what should be done?

The WITNESS. Yes, sir. It doesn't make any difference, however——

Presiding Judge McCLELLAND. Well, it seems clear that he was the clerk.

Mr. AUSTER. Yes, sir.

Presiding Judge McCLELLAND. He didn't exercise any judgment.

By Mr. AUSTER:

Q. What you have been telling us this morning and this afternoon was based on instructions you received at the time you had those entries or those invoices before you and at the time you had these reports before you?—A. Yes.

On this record the trial court held that it was clear from the evidence that the *appraiser* had *approximated* the costs, charges, etc., for placing the merchandise in condition, packed ready for shipment to the

United States; that the Government agents' reports, Exhibits 1, 2, 4, and 5 to 8, inclusive, did not refer to any of the invoices of the involved merchandise; that the *appraiser* did not *ascertain* the costs, etc., of packing the involved merchandise as required by law, but accepted arbitary amounts fixed by the Government's special agents. The court then said:

What then, is the situation? The importer has accepted the appraisement of the merchandise at its *per se* unit value. The Government concedes the charges for cases and packing to be correct as well as the consular fees. The only proof to support the other items of charges on the invoices is that of the importer's witness who stated that he paid the charges noted on each invoice. In the absence of any proof to the contrary on this point, I am of opinion that we should accept this statement as to these charges. If the Government considered that they were fraudulent, it might have called for the orders placed by this company and if such orders showed a unit value higher than the unit dutiable value, and also showed that the difference in unit value had been made up to the exporter by a distribution of the same to these various charges then a different situation would have arisen.

and, accordingly, held that the entered values were the dutiable values of the merchandise.

The appellate division of the Customs Court affirmed the judgment of the trial court.

It seems to be conceded by counsel for the parties that the dutiable values of the merchandise are its export values.

The judgment of the appellate division of the Customs Court is challenged by counsel for the Government on three grounds; namely, first, that the court failed to state in its decision the facts upon which its conclusion was based, as required by section 501 of the Tariff Act of 1930; second, that the court erred in approving the ruling of the trial court admitting in evidence the testimony of appellee's witness Sullivan; and, third, that the judgment is not supported by substantial evidence.

Section 501, *supra*, provides that the Customs Court—

shall state its action in a written decision, to be forwarded to the collector, setting forth the facts upon which the finding is based and the reasons therefor.

It is obvious from the decision of the appellate division of the Customs Court that it did not set forth the facts in its decision upon which its finding was based, nor did it give the reasons for its conclusion. The court stated, however, that—

In view of the well-considered and sound decision of the trial court we do not consider it necessary for us to discuss or analyze these various assignments of error separately. The decision and judgment of the trial court are amply supported by the record in this case, and we find no error therein, nor do we find any error in the rulings of the trial court in either admitting or excluding testimony or documentary evidence at the trial of this case.

We therefore find as matter of fact:

That the merchandise in these cases consists of decorated Japanese earthenware, porcelainware, and chinaware, imported at the port of Boston.

That the export value is the correct dutiable value of the merchandise covered by these appeals.

We therefore hold, as matter of law, that the correct dutiable value of the instant merchandise is the entered value.

Counsel for appellee argue that it appears from the decision of the appellate division that that court adopted the findings of fact set forth in the decision of the trial court, and contend that the forwarding to the collector of both decisions would inform him as to the facts upon which the decision of the appellate division was based.

Due to the fact that we have reached the conclusion that the judgment must be reversed for reasons hereinafter stated, we deem it unnecessary to discuss that issue.

During the direct examination of the witness Sullivan by counsel for appellee, counsel for the Government objected to the testimony on the ground that, as stated by him, "Mr. Sharretts is attempting to go behind the appraisement and to find out what was done, and to that I object."

Prior to his cross-examination, counsel for the Government renewed his objection to the introduction of the testimony of the witness, and made the further objection that the testimony was hearsay.

By virtue of the provisions of section 500 of the Tariff Act of 1930 it is the duty of the *appraiser to appraise merchandise—*

in the unit of quantity in which the merchandise is usually bought and sold by *ascertaining* or *estimating* the value thereof by all reasonable ways and means in his power, any statement of cost or cost of production in any invoice, affidavit, declaration, or other document to the contrary notwithstanding;

that of the *assistant appraisers—*

(1) To examine and inspect such merchandise as the appraiser may direct, and to report to him the value thereof; (2) To revise and correct the reports and to supervise and direct the work of such examiners and other employees as the appraiser may designate; and (3) To assist the appraiser, under such regulations as the Secretary of the Treasury or the appraiser may prescribe;

and that of the *examiner—*

to examine and inspect the merchandise and report the value and such other facts as the appraiser may require in his appraisement or report, and to perform such other duties as may be prescribed by rules and regulations of the Secretary of the Treasury or the appraiser. [Italics ours.]

Section 501, *supra*, provides that—

The value found by *the appraiser* shall be presumed to be the value of the merchandise and the burden shall rest upon the party who challenges its correctness to prove otherwise. [Italics ours.]

The red-ink notations on the invoices, referred to by the witness Sullivan, are ambiguous in that they do not specify what costs and

charges were included in the appraised values; nevertheless, it is clear from such notations that the entered values of the involved merchandise were advanced in the amounts specified. Furthermore, it is clear from those notations, except possibly in reappraisement 98867–A, that the advances in values were due to additions for costs and charges incident to placing the merchandise in condition, packed ready for shipment to the United States.

It may be, as argued by counsel for the Government, that the testimoney of the witness Sullivan is incompetent, because it was directed to the purpose of impeaching the appraiser's findings of fact and the reasons for his decision (in this connection see 22 C. J. §§ 1388 and 1412, pp. 1077, 1078, and 1082, and cases cited; *Crescent Live Stock Co.* v. *Butchers' Union*, 120 U. S. 141, 157, 159; *Muser* v. *Magone*, 155 U. S. 240, 252), or it may be that it is objectionable on the ground that it is hearsay. However, we find it unnecessary to decide either of those issues, because we think it is clear that the testimony does not establish either that the decisions of the appraiser were invalid, or that they were in any respect erroneous.

It is true that the testimony indicates that the *examiner* relied upon the reports of Government agents as to costs and charges incident to placing merchandise similar to that here involved in condition, packed ready for shipment from Japan to the United States.

It is the duty of the *appraiser*, as provided for in section 500, *supra*, to *ascertain or estimate* the value of imported merchandise.

Section 402 (d) of the Tariff Act of 1930 includes within the definition of export value (the value with which we are here concerned)—

the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

It would seem to be clear, therefore, that, in *ascertaining* or *estimating* export value of imported merchandise, the appraiser is required to *ascertain* or *estimate* the *costs* of containers, and other costs, charges, and expenses included in the definition of export value, and has no authority to *ascertain* or *estimate* the *value* of such containers, etc. *United States* v. *Richard & Co.*, 14 Ct. Cust. Appls. 120, T. D. 41646; *United States* v. *F. W. Woolworth Co. et al.*, *supra*.

There is nothing in the record to indicate that the *examiner* estimated the *value*, rather than the *costs* of the containers and other charges and expenses incident to the packing of the involved merchandise. Accordingly, it does not follow that, because the *examiner's* estimates of such costs, charges, and expenses were based upon the reports of the Government agents as to costs, charges, etc., of packing similar merchandise, they are erroneous. They may be, and, so far as this record is concerned, are precisely in accordance with the facts.

So far we have discussed the evidence as though the *examiner*, rather than the *appraiser*, appraised the involved merchandise. There is no evidence of record as to what facts were before the appraiser, or what his reasons were for approving the examiner's action. See *United States* v. *Manahan Chemical Co., Inc.*, 24 C. C. P. A. (Customs) 53, T. D. 48333.

Counsel for appellee argue, however, that Exhibit 1, a report of a Government agent, shows that such items as transportation, shipping, handling, fire insurance, storage, and "Petty" were nondutiable.

Exhibit 1 relates to consular invoices Nos. 3015 and 3039, which cover merchandise similar to that in the case at bar. Although the merchandise covered by those invoices appears to have been purchased in the Nagoya district where some of the involved merchandise was purchased, it was not purchased from the exporters of any of the involved merchandise. Furthermore, costs of packing the merchandise covered by those invoices are not stated, and the amounts for transportation, shipping, handling, fire insurance, storage, and "Petty," which counsel for appellee claim were stated in the exhibit to be nondutiable, are not the same as the amounts for such items claimed to be nondutiable in the instant case. So, if it be assumed that Exhibit 1 indicates that the items specified therein as transportation, etc., are nondutiable, there is nothing in the exhibit which even suggests that the sums or amounts claimed in the instant case to be nondutiable, are, in fact, nondutiable.

It is further contended by counsel for appellee, and it was held by each of the courts below, that the testimony of the witness Smith that appellee paid the charges of the exporter in exact accordance with the invoices is sufficient to establish that the invoiced costs of packing were correct, and that the items and the amounts thereof, invoiced as nondutiable, were, in fact, nondutiable. ·

We think it is clear from the testimony of the witness that what he intended to be understood as saying was that he paid the invoice prices of the merchandise. But even assuming that he intended to say that he paid for the merchandise in "exact accordance with the invoices," such testimony, in our opinion, is not sufficient to establish that the sums stated on the invoices to be nondutiable, were, in fact, nondutiable.

According to the testimony of the witness Sullivan, the *examiner* raised no question as to the amount paid by the importer. He simply held that a certain proportion of the amounts invoiced as nondutiable should have been included in the packing costs and charges incident thereto. There is nothing in the testimony of the witness to indicate that the *examiner* was in error.

We conclude, therefore, that there is no substantial evidence of record to support the judgment of the appellate division of the

Customs Court holding that the *appraiser* included nondutiable costs or charges in the appraised values of the merchandise, and that the presumption of correctness attending his decision had been overcome.

For the reasons stated, the judgment is *reversed* and the cause *remanded* with directions to *reverse* the judgment of the trial court and *remand* the case to it with instructions to *dismiss* the appeals to reappraisement.